LEHIGH VALLEY RAILWAY COMPANY et al., Appellants, *v.*
ROBERT B. ADAM et al., Constituting the Grade Crossing
Commissioners of the City of Buffalo, Respondents.

BUFFALO (CITY OF) — POWER OF COMMISSIONERS UNDER GRADE CROSS-
ING ACTS TO CHANGE GENERAL PLAN.   Under the Buffalo Grade Crossing
Acts (L. 1888, ch. 345; L. 1890, ch. 255; L. 1892, ch. 353) providing that:
1. The general plan to be adopted may be amended only in matters of
detail.   2. It shall not be extended beyond the general plan heretofore
adopted under which contracts have been entered into.   3. Contracts
heretofore or hereafter made with railroad companies may be changed by
agreement between the contracting parties, but not otherwise — where the
commissioners in March, 1893, adopted a general plan which provided
for no change in the grade of a railroad running through the city as then
constructed and operated, they cannot compel the railroad company to
change the elevation of its tracks and reconstruct its terminal structures,
sidings and switches to comply with a plan proposed and adopted in
1899, which is an extension of the general plan of 1893, and not a modifi-
cation, in some details, of that plan.
   *Lehigh Valley Ry. Co.* v. *Adam,* 70 App. Div. 427, reversed.

(Argued October 26, 1903; decided November 10, 1903.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the fourth judicial department, entered
April 18, 1902, upon an order reversing a judgment in favor
of plaintiffs entered upon a decision of the court on trial at
Special Term and granting a new trial.

   This action was brought to obtain an injunction to restrain
the defendants from proceeding to compel the plaintiff rail-
way company to elevate a part of its road in the city of
Buffalo and to reconstruct its freight and passenger terminals.

   The facts, so far as material, are stated in the opinion.

   *Martin Carey* and *James McC. Mitchell* for appellants.
The respondent grade crossing commissioners have no author-
ity, under the statute, to compel the elevation of three-quarters
of a mile of the main line of the appellants' railroad and the
reconstruction of its freight and passenger terminals as pro-

posed. (*Power* v. *Vil. of Athens*, 99 N. Y. 592; *Matter of Breslin*, 45 Hun, 210; *People* v. *O'Brien*, 111 N. Y. 1; *Milhau* v. *Sharp*, 27 N. Y. 611; *Davis* v. *Mayor, etc.*, 14 N. Y. 506; *People* v. *Sturtevant*, 9 N. Y. 263.)

*Spencer Clinton* for respondents. The commissioners are not restricted by their contract with the railway company, made in 1888, from amending their plan so as to compel the company to raise its tracks. (*Cleveland* v. *City of Augusta*, 102 Ga. 233; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556; *W. R. R. Co.* v. *Defiance*, 167 U. S. 88; *C., B. & Q. R. R. Co.* v. *Nebraska*, 170 U. S. 57.)

WERNER, J. The grade crossing commission of the city of Buffalo is a body of statutory creation and jurisdiction. (Ch. 345, L. 1888; Ch. 255, L. 1890; Ch. 353, L. 1892.) The question before us is whether that body had jurisdiction in 1899 to impose upon the Lehigh Valley Railway Company the burden of elevating its tracks in accordance with the plan then adopted. The answer to that question is to be found in the statute (Ch. 353, L. 1892), which is the latest legislative grant of power to the commission, and which provides that the commissioners "shall adopt a general plan for the relief of the city from the present and prospective obstructions of the streets of the city by railroads crossing the same at grade and may from time to time alter, amend, or modify the same as to any detail, but said general plan, when adopted, shall not extend beyond the general plan heretofore adopted by said commission under which contracts have already been entered into, nor shall the same be extended; they may make contracts on behalf of the city with any railroad company or companies to carry out the purpose of this act, and may, by agreement with the contracting company, alter, modify or change any contract heretofore or hereafter made by them."

This statute contains three emphatic limitations: 1. The general plan to be adopted may be amended only in matters of detail. 2. It shall not be extended beyond the general plan

heretofore adopted under which contracts have been entered into. 3. Contracts heretofore or hereafter made with railroad companies may be changed by agreement between the contracting parties, but not otherwise. Under this statutory authority, thus limited, the commission, in November, 1893, adopted a general plan which provided for no change in the grade of the Lehigh Valley Railway Company as then constructed and operated, and which left undisturbed the street crossings at grade over its right of way.

What was the physical situation of the Lehigh Valley Railway Company when the general plan of 1893 was adopted? It came into and ran through the city of Buffalo above grade to a point east of Louisiana street, where it descended to grade and thus crossed the latter street and Chicago street; thence along the bed of Scott street to Michigan street, crossing the same at grade and then over its own property to its terminal station at Washington street. This has been the unchanged physical condition of the right of way of that railroad in the city of Buffalo from 1882, when it first began to operate, with the single exception that in 1888, after the passage of the first Grade Crossing Act, and after the adoption of the first general plan by the grade crossing commission, the grade at the Michigan street crossing was slightly changed to conform to the plan for a viaduct over other railroads. This change was made pursuant to the contract of November, 1888, between the commissioners and the railway company.

What was the change proposed under the plans and procedure of the commission in 1899? It involved the elevation of the Lehigh tracks over a distance of three-fourths of a mile upon a structure of stone and iron or steel. In effect, it also required the reconstruction of its terminal structures, sidings and switches. The most cursory glance at the proposed plans discloses the magnitude and importance of the projected change.

Was this proposed change a mere amendment in some detail of the general plan of 1893, or was it a substantial extension

of the plan? The undisturbed findings of fact of the trial court present a conclusive answer to this question. The trial court has specifically found that the proposed change is an extension of the engineers' plan of 1888, of the general plan of 1888 under which the contract of that year between the plaintiff and defendant was entered into, and of the general plan of 1893.

. The reversal by the Appellate Division of the judgment entered upon that finding must be presumed to have been based upon questions of law (Sec. 1338, Code Civ. Pro.), so that the fact as found by the trial court must stand for the purposes of this review. If we go a step further, however, and concede for the purposes of the argument that what is called a finding of fact is really a conclusion of law, we cannot escape the conviction that it was sound and just as applied to the conceded facts of the case. We think that the learned trial court was right in holding that the proposed plan for the elevation of the Lehigh Valley Railway Company's tracks in 1899 was an extension of the general plan of 1893, and that the learned Appellate Division erred in deciding that it was a mere modification, in some detail, of that previous plan.

This view necessarily leads to the conclusion that the commissioners were without power to impose upon the Lehigh Valley Railway Company the burden of changing its railroad to conform to the proposed plan of 1899.

Since the question before us is not whether such power could have been, or can be, granted by the legislature, but simply whether it was granted under the acts above referred to, we may here properly end the discussion of the subject by stating that the judgment of the Appellate Division must be reversed, and that of the trial court affirmed, with costs to the plaintiff in all courts.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and CULLEN, JJ., concur.

Judgment reversed, etc.