ERIE RAILROAD COMPANY, Appellant, *v.* CITY OF BUFFALO et al., Respondents.

BUFFALO (CITY OF) — CONTRACT OF GRADE CROSSING COMMISSIONERS WITH RAILROAD COMPANY — WHEN FAILURE OF COMMISSION TO COMPLY WITH PROVISIONS THEREOF ENTITLES COMPANY TO INJUNCTION.    Where a contract between a railroad company and commissioners appointed under the Buffalo Grade Crossing Acts (L. 1888, ch. 345, as amended) provided that certain structures designed to abolish or mitigate the evils of grade crossings should be constructed, that each party should bear a certain portion of the expense, that a viaduct on Perry street should not be erected until "the work on other streets is finished * * * and until it shall be determined by two-thirds of the commissioners that the construction of said work (Perry street) is necessary," the company is entitled to an injunction restraining the erection of the viaduct until the commissioners have performed the conditions precedent, where it appears that the work on the other streets is unfinished and that the necessity for its erection was determined, not by the votes of two-thirds of the whole board of ten commissioners, but by the votes of but six commissioners, and the fact that there were two vacancies in the board does not alter the situation : an objection that the plaintiff has an adequate remedy at law in that it can successfully resist the payment of its proportion of the expense is untenable, since such a case comes within the rule that when a defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, an injunction will almost universally be granted until the condition is complied with.

*Erie R. R. Co.* v. *City of Buffalo,* 96 App. Div. 458, reversed.

(Argued December 13, 1904; decided December 30, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 9, 1904, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on

trial at Special Term; also appeal from an order of said Appellate Division entered July 6, 1904, which affirmed an order of Special Term vacating a temporary injunction.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William L. Marcy* and *Adelbert Moot* for appellant.    The acts of the commissioners and the city in attempting to construct the Perry street viaduct were illegal, unlawful and without power.    (L. 1888, ch. 345; L. 1890, ch. 255; L. 1892, ch. 353; L. 1895, ch. 1039; *Matter of Livingston,* 121 N. Y. 94; *L. V. Ry. Co.* v. *Adam,* 176 N. Y. 420; *People* v. *O'Brien,* 111 N. Y. 1; *People ex rel.* v. *Adams,* 74 App. Div. 613; *State* v. *Bd. of Education,* 35 Ohio, 368; *N. J. R. Co.* v. *Suydam,* 17 N. J. L. 47; *Ex parte Wilcox,* 7 Cow. 402; Thompson on Corp. §§ 726, 3917.)    Plaintiff, as a party to an executory contract which is being violated by the other contracting party, is entitled to an injunction prohibiting the city from violating its provisions because not only are the acts of the commissioners without power and unlawful but plaintiff has no adequate redress at law.    (2 High on Injunctions [3d ed.], § 1135; *McElroy* v. *Kansas City,* 21 Fed. Rep. 257; *U. P. R. R. Co.* v. *R. I. R. R. Co.,* 163 U. S. 564; *W. U. T. Co.* v. *R. & B. T. Co.,* 42 N. J. Eq. 311; 2 Addison on Cont. [8th ed.] 706; *S. F. C. Co.* v. *Seigel-Cooper Co.,* 157 N. Y. 60; *Lacy* v. *Hauck,* 12 Wkly. L. B. 209; *Goddart* v. *American Queen,* 44 App. Div. 454; *S. P. Co.* v. *M. B. Co.,* 33 App. Div. 409.)

*De Witt Clinton* and *Spencer Clinton* for respondents.    The plaintiff's complaint does not show a cause of action against the defendants under section 1925 of the Code of Civil Procedure.    (*Talcott* v. *City of Buffalo,* 125 N. Y. 280; *Ziegler* v. *Chapin,* 126 N. Y. 342.)    The grade crossing commissioners are alone clothed with the power to decide upon the necessity for a viaduct in Perry street over the tracks of the Erie Railroad Company.    (L. 1892, ch. 353.)    The plaintiff has

not nor will it suffer any damage by the construction of the viaduct in Perry street. (*Reynolds* v. *Everett*, 144 N. Y. 189; *W. R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Brass* v. *Rathbone*, 153 N. Y. 435; *McHenry* v. *Jewett*, 90 N. Y. 58.)

WERNER, J. This action was brought to restrain the building of a viaduct at the intersection of a branch of the plaintiff's railroad with Perry street in the city of Buffalo. The viaduct was comprehended in the general plan adopted by the grade crossing commissioners, pursuant to which plan they entered into contracts with various railroad corporations for the erection of such structures as would relieve the city from the dangers and inconveniences of grade crossings. Among other contracts thus entered into was one between the plaintiff and the commissioners, dated February 8th, 1895, which provided for certain structures designed to abolish or mitigate the evils of grade crossings along the plaintiff's line of railroad within the city of Buffalo, and specified the proportion of the cost which each of the parties should bear. This contract, after enumerating the details relating to a number of these structures, proceeds, so far as material to this controversy, as follows: "*Eleventh.*— It is agreed that all the work described in the section of the General Plan under the heading 'Perry Street: Erie R. R.,' as shown on Detail Plan No. 8, shall not be undertaken by the City or the Company for the present, but that the consideration thereof shall be deferred until the work on the other streets is finished (except in the event of the construction in said Perry street, at said crossing, of a street surface railroad before the completion of the work on all such other streets), and until it shall be determined by two-thirds of the Commissioners that the construction of said work is necessary." The remaining portion of the paragraph is immaterial, because it relates to certain matters which were only to be considered in the event that a street surface railroad should be constructed in Perry street before the completion of the work in the "other streets" referred to in that part of the eleventh paragraph of the contract above quoted.

In the month of March, 1903, the grade crossing commissioners adopted a resolution to proceed with work on the Perry street viaduct, which is the one referred to in the above-quoted clause of the contract, and when proceedings were taken to carry the resolution into effect, the plaintiff brought this action. A temporary injunction was granted in accordance with the plaintiff's prayer for relief. This injunction was subsequently vacated, but the parties entered into a stipulation staying proceedings pending the determination of the issues. The case was tried, and although every material fact was found in favor of the plaintiff, it was defeated by adverse conclusions of law which resulted in the dismissal of the complaint. The judgment entered upon that decision was affirmed at the Appellate Division. The latter court seems to have based its decision primarily upon the plaintiff's failure to meet the requirements of the taxpayers' statute (Code Civ. Pro., Sec. 1925) as enunciated in *Talcott* v. *City of Buffalo* (125 N. Y. 280); *Ziegler* v. *Chapin* (126 N. Y. 342), and other kindred cases cited.

We shall not discuss the question whether plaintiff's allegations and proofs are sufficient to support a taxpayer's action, because there is another point of view which gives the case a different aspect and entitles the plaintiff to relief. The plaintiff is a party to the contract as well as a taxpayer, and when its claims in the latter capacity have been disposed of the question still remains whether it has alleged and proved facts that give it a standing in court on account of its direct interest in the contract. The complaint and the findings set forth facts which clearly show the nature and extent of plaintiff's interest as a party to the contract, and, for reasons which we hope to make clear as the discussion proceeds, we think the courts below erred in holding that the plaintiff's failure to establish a taxpayer's cause of action made it necessary to dismiss the complaint.

The general powers and duties of the grade crossing commissioners need not be discussed at length. They are not only fully set forth in the statute creating the commission and its

several amendments (Laws 1888, 1890, 1892, 1895, 1897), but they have also been the subject of review and construction in this court. (176 N. Y. 420.) Suffice it to say, therefore, that among the duties imposed upon the commissioners were those of adopting a general plan which, when adopted, could not be extended, but could be modified, altered or amended as to any detail. Coupled with these duties were the right to determine at what time and in what order any of the work projected in pursuance of the general and detail plan should be done; and the power to enter into contracts with the railroad companies affected by the proposed changes, which contracts "shall be binding upon the City," and which "by agreement with the contracting company," the commissioners may "alter, modify or change."

The substance of the plaintiff's alleged grievance as a party to the contract is, that the commissioners are threatening forthwith to build the viaduct in Perry street, although, by the express terms of the eleventh clause of the contract that was not to be done until "the work on the other streets is finished * * * and until it shall be determined by two-thirds of the Commissioners that the construction of said work (Perry street) is necessary." The work "on the other streets" that is unfinished according to the finding of the trial court, is as follows : "The subway in William street and the foot-bridge at Fulton street provided for in said contract have not been commenced."

The argument in support of the judgment herein is, that the statute imposes upon the commissioners the duty of determining at what time and in what order the work shall be done and, therefore, the commissioners have no right to enter into any contract that interferes with this exercise of official discretion and judgment. The difficulty with that argument is that it ignores the express language of the statute which empowers the commissioners to enter into contracts with railroads that shall be binding upon the city and which, when made, can only be abrogated or changed with the consent of the contracting railroad. The argument further

ignores the fact that the very making of the contract by the eleventh clause of which the Perry street work was to be deferred until the other work was finished, was an exercise of the judgment and discretion vested in the commissioners. In view of these considerations we fail to perceive that there is any conflict between the provisions of the contract and the statutory duties of the commissioners. On the contrary, the contract and the statute seem to be in literal accord.

But this is not all there is of the question. The work on Perry street was not only to be deferred until the "other work" was finished, but "until it shall be determined by two-thirds of the Commissioners that the construction of said work (Perry street) is necessary." The only resolution of the commissioners upon this subject that has been brought to our attention is the one above referred to as having been adopted March 24th, 1903, which reads as follows: "The Perry street structure over the Erie Railroad was taken up. Mr. Scheu moved, Mr. Ryan seconded: That the work should now be done." This resolution, which does not purport to determine that "the construction of said work is necessary," was adopted by the vote of six commissioners. The commission as created by the statute consisted of ten members. The resolution, therefore, falls short of the requirements of the contract in two particulars. It does not determine that the Perry street work is necessary, and it was not adopted by the requisite number of votes. It is true that two members of the commission had died prior to the adoption of the resolution, and that their places had not been filled, but the statute provided a very simple and effective method of filling vacancies. According to the rules which govern corporate bodies, and deliberative or elective assemblies composed of a definite number of persons, a majority of the whole number is necessary to constitute a legal meeting, and the number necessary to constitute a quorum remains the same even though there may be vacancies in the membership. (Thompson on Corporations, secs. 726, 3917; Statutory Construction Law, sec. 19.) Six members would, of course, constitute a majority of the full com-

mission, but the contract provided that the determination as to the necessity of proceeding with the Perry street work must be made by two-thirds of the commissioners. Applying the rules which ordinarily control such cases, it is obvious that this means two-thirds of the whole commission and not two-thirds of the survivors.

But here again it is argued that the terms of the contract are in derogation of the provisions of the statute which empowered any six of the commissioners to enter into contracts with railroad companies, and again the argument ignores the basic fact that any contract entered into by not less than six of the commissioners shall be binding upon the city, and that no such contract shall be modified or changed except by agreement with the contracting railroad. In the case at bar the contracting railroad has agreed that the commissioners may do certain work in the future, but only upon the fulfillment of two conditions, the first of which was that the other work must first be finished, and the second of which was that the necessity of the deferred work must be determined by two-thirds of the commissioners. We fail to discover in this part of the contract anything that is at war with the statutory powers or duties of the commissioners, and we think it is binding upon the city.

In order that this conclusion may not be left open to the criticism that we are giving too much weight to what may superficially be regarded as a purely technical provision of the contract; and that we attach too little importance to the manifold difficulties attendant upon such a great work as that intrusted to the defendant commissioners, it may not be out of place at this point to add a few general observations as to the physical conditions which probably had much to do with dictating the feature of the contract under discussion. That portion of the plaintiff's railroad which crosses Perry street is not on its main line, but is only a branch. Perry street, in the vicinity of its intersection with that branch, is very little traveled and is lined with houses of the humbler sort. At a short distance to the north and also a short distance south of

Perry street, there are two parallel thoroughfares which, in the general plan adopted by the commissioners, have been provided with viaducts that will accommodate the whole surrounding section. The plaintiff's share of the cost of the Perry street viaduct was to be upwards of one hundred thousand dollars, which was a very considerable item in connection with the other burdens that had been cast upon it. In these circumstances it was entirely natural and reasonable that the matter of constructing the Perry street viaduct should be left open to await developments that might render this part of the work wholly unnecessary. Such an arrangement necessarily involved some method of procedure to make it binding and effective. The method chosen was, that all other work on that line should first be done before the Perry street work should be taken up for consideration, and that when it was so taken up, the determination must be made by two-thirds of the commissioners. The determination was to be made in the light of experience gained by work actually finished, and by a sufficient number of commissioners to reduce to a minimum the possibility of final mistake. It is quite among the possibilities that the added judgment of two commissioners appointed in the place of those deceased would have decided the question in favor of the plaintiff. This was, therefore, not a mere technical provision of the contract, but a thing of substance depending largely upon the practical outcome of what had already been done.

Quite apart from the foregoing considerations, however, we think the gist of the whole controversy may be expressed in a single paragraph. If there was a contract as to the Perry street work, it is made binding upon the city by the explicit command of the statute, and if there was no contract, then the commissioners have not proceeded in compliance with the terms of the statute. (Sec. 3, Grade Crossing Act.)

Finally, it is urged for the respondents that the action cannot be maintained because the plaintiff has an adequate remedy at law. It is suggested that if the commissioners are proceeding in violation of their contract, the plaintiff can suc-

cessfully defend any action brought against it to recover its proportion of the cost of the Perry street viaduct, and that, in any event, its damages could be conveniently and accurately admeasured. While all this may be possible, it is by no means clear. Who can tell in what particular manner and at what precise cost the work will be done if it is deferred until the other work is finished and two-thirds of the commissioners then determine that it shall be done? Who can now say what bonds will sell for and what work will cost when that time comes? The plaintiff is not only a party to the contract, but is the owner of adjacent lands that will be affected physically and pecuniarily by the construction of a viaduct in Perry street. The plaintiff's position is to be considered, not in the light of what it will know when the court of last resort has passed upon the question involved, but by reference to conditions which existed when the controversy arose. It is more than probable that if the plaintiff had simply rested on its supposed legal rights and had relied upon its defense to an action for the recovery of its proportion of the cost of the Perry street viaduct, it would have been met with the embarrassing suggestion that it had looked on and permitted the work to progress without objection, and was, therefore, estopped from claiming that it was not liable. But even if no such question could have arisen, there would still have remained the difficulty and, perhaps, the impossibility of proving its damages. It is to be remembered, moreover, that we have here a case in which the terms of the contract and their violation are plain, and that the remedy by injunction is peculiarly appropriate, because it does not permanently interdict the work, but only until the commissioners have performed the conditions precedent which they have agreed upon. (1 Joyce on Injunctions, 75.) These conditions can still be performed, and when performed the plaintiff will have no ground for complaint. We think this case is well within the rule that " when a defendant has an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the

defendant, injunction will almost universally be granted until the condition is complied with." (*McElroy* v. *Kansas City,* 21 Fed. Repr. 257.) The real question in such cases as this is not whether a party is utterly without remedy at law, but whether the legal remedy, if any, is inadequate in the sense that it will not place the parties to the contract in the same positions which they occupied before the attempted breach of the contract. Measured by this just rule, the case at bar is one in which we think a court of equity was open to the plaintiff, and that the injunction, properly granted in the first instance, should not have been vacated.

If these conclusions are approved by the court, it follows that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

O'BRIEN, HAIGHT and MARTIN, JJ., concur; CULLEN, Ch. J., GRAY and BARTLETT, JJ., dissent.

Judgment reversed.