Vaet Voorhis, J.
(dissenting). The basic question presented by this submission is whether the testator intended that there should continue to be eight trustees to administer the charitable trust created by his will, of representative standing in the community, or whether the number was meant to be reduced progressively, in course of time, as the particular positions became abolished which were mentioned in the will as designating the persons to act as trustees. The law appears to be correctly stated in comment b of section 108 of the Restatement of the Law of Trusts, that “ If the settlor names several persons as trustees and one of them dies or is or becomes incapable of acting as trustee or disclaims or resigns or is removed, a new trustee will be appointed to take his place if the settlor manifested an intention that the number of trustees should not be diminished. In the absence of any such provision in the terms of the trust, vacancies will be filled if, but only if, it appears conducive to the proper administration of the trust to fill such vacancies; if a new trustee is not appointed, the remaining trustees can administer the trust.” That is evidently what is meant by the statement in some of the decisions that, unless the will indicates otherwise, successor trustees will be appointed by the court to *283 serve with surviving trustees only where the appointment is necessary to carry out the terms of the trust (Matter of Zerega, 81 Misc. 113, affd. 160 App. Div. 878; Matter of Dietz, 132 App. Div. 641; Matter of Leavitt, 135 App. Div. 7).
It is undoubtedly the rule that where a deed of trust or a will merely names certain persons as trustees, and one or more of them dies or for some other reason fails to qualify or ceases to serve, the burden is upon an interested party, petitioning the court to appoint a successor or successors, to show that it is necessary to make such appointment in order to protect the trust property; that is to say, to advance some convincing reason, based on fact, on account of which the trust estate would be likely to suffer unless that were done.
A different situation arises where the instrument creating the trust indicates an intention on the part of the testator or settlor that successor trustees shall be appointed. If Captain Randall had said in so many words that there were to be eight trustees to administer The Sailors’ Snug Harbor fund, the duty of the Supreme Court to fill vacancies could not be disputed (Colson v. Pelgram, 259 N. Y. 370). Instead of stating that there should be eight trustees, this testator directed that the trustees should consist of the incumbents of eight prominent public or private positions in the State or city of New York. He did not intend that the number of trustees should be reduced on the deaths of the holders of these offices or positions, but considered that the positions which he had enumerated designated the number of trustees who would continue to serve. Two of these were the Chancellor of the State and the recorder of the city, both judicial offices which long afterwards were abolished.
It so happens that since the death of the testator on June 5, 1801, there have remained in existence the offices of the Mayor, president of the Chamber of Commerce, president and vice-president of the Marine Society, and the senior ministers of the Episcopal and Presbyterian Churches in the city of New York. The present Mayor has resigned as trustee. The chief question is whether, under these circumstances, it was the intention of the founder of this charity that it should continue to be administered by the holders of these remaining positions named in his will which have not been abolished, or whose incumbents have not resigned as trustees, and that no successors should be appointed by the Supreme Court as in case of vacancy. According to defendants’ reasoning, the number serving might be reduced even to one, without the appointment of successors to the others, provided that the trust were competently admin *284 istered by Mm. This does not appear to have been the meaning of Captain Randall’s will. This will, as it seems to me, expresses a carefully matured plan. Captain Randall conceived that he was founding an outstanding and eventually a wealthy charitable enterprise, wMch he desired should be administered by a group of representative citizens possessing collectively a well-balanced diversity of judgment and experience. The endowment was to be managed by retired marine officers, clergymen, a leading businessman, the Mayor of the city, and two holders of judicial office. He provided, as he thought, for continued administration by these elements in the community. It does not follow from the fact that for precision he named the offices whose incumbents should act as trustees, that he intended to eliminate representatives of any of these elements in the community if the offices mentioned were abolished. If the Marine Society, for example, passed out of existence, the conclusion would be unwarranted that he intended that no acting or retired maritime officers should participate thereafter in the management of The Sailors’ Snug Harbor. If the Chamber of Commerce were to be superseded by some other organization, it would not follow that Captain Randall intended to dispense with a leading businessman among the trustees. This testator evidently considered also that prominent citizens trained in the law, preferably of judicial stature, were as valuable to the administration of his plan as clergymen, maritime officers, businessmen, or the Mayor of the city. It would not be appropriate to determine that any of these groups ranked higher in his estimation for his purpose than the others, or that some were in his judgment more necessary than the rest to the protection of the trust property or the carrying out of his objectives.
The case of City of Boston v. Doyle (184 Mass. 373) is clearly in point. "When the selectmen of the Town of Boston passed out of existence when it became a city, as held by the Supreme Judicial Court of Massachusetts, they ceased to be trustees of a charitable fund established by the will of Benjamin Franklin, but the court said (pp. 382-383): “ The will contained no provision in regard to the persons who should act as managers if the office of selectmen of Boston should be abolished. But the general purpose of the testator that the fund should be in charge of a board of managers remained unchanged, and in such a case, when it becomes impossible to administer a public charity precisely according to the directions of the founder, it is the duty of a court of equity to carry out his general purpose as nearly as practicable. [Citing cases.] The will being silent as to the *285 persons who are to act as managers with the ministers when there are no longer selectmen, it is for a court of equity on application, by virtue of its general jurisdiction over the administration of trusts, to appoint other managers.” It was held that the lapse of eighty years did not alter the duty of the court to appoint the same number of trustees as those who had been selectmen before Boston became a city in 1822, and that the court should make such appointments from among persons having similar qualifications to those of the selectmen at the time when the will was drawn, who “ would naturally represent a considerable proportion of the intelligence, integrity, strength, and business ability of the town at that time.” (P. 386.)
Such a disposition undoubtedly carried out the intention of Dr. Franklin, notwithstanding changes occurring after his death which rendered impossible a literal compliance with the direction in his will. The shape of things to come may change to such a degree that the directions of humanitarians in former generations may not be able to be carried into effect, but where, as here, the alteration is only in formal details, the purpose of the testator should be executed by the selection of a full complement of trustees of the ability, standing, and diversified experience which he contemplated. It is no answer that justices of the Supreme Court of New York are forbidden by the State Constitution to hold other public offices or trusts. It is unnecessary to appoint a Supreme Court justice as a successor to the Chancellor, even though the Chancellor’s powers and duties have devolved upon the Supreme Court. That is a formal objection, easily surmounted by the appointment of some outstanding lawyer or former judicial officer having the same caliber and similar type of experience. The same statement applies to a successor to the recorder of the city of New York. The vacancy due to the resignation of the Mayor presents no serious problem; it can readily be filled by some suitable member of the city administration.
The argument is unsonnd that testator wanted judicial officers among his trustees for the reason that when the will was drawn it was uncertain whether the courts would exercise supervision over charitable foundations. It is improbable that the draftsman of this will entertained the idea that if the courts lacked such jurisdiction, they would acquire it by the simple device of placing the Chancellor on the board of trustees, to say nothing of the recorder whose jurisdiction was limited to criminal matters.
The requirement that there shall be eight trustees does not invalidate action taken while there have been less than eight on *286 the board; it simply means that the court is required to fill the vacancies upon application being made.
In my judgment, the questions should be answered as follows:
“ A ” — No.
“ B ” — Yes.
“ C ” — Yes.
“ D ” — Yes.
“ B ” — Yes.
“ F ”— Yes.
“ G ” — No. The will confers no power upon the Governor to appoint trustees additional to the eight named in the will, irrespective of the effect of the case of Trustees of Dartmouth Coll. v. Woodward (4 Wheat. [U. S.] 518).
“ H ” —No. (Erie R. R. Co. v. City of Buffalo, 180 N. Y. 192.)
The other questions do not require an answer.
Peck, P. J., Gleunon and Shientag, JJ., concur with Dore, J.; Van Yoorhis, J., dissents in opinion.
Judgment granted in accordance with the opinion filed herein. Settle order on notice.