IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| OPTIMISCORP,<br>a Delaware corporation,<br>ALAN MORELLI, and<br>ANALOG VENTURES, LLC,<br><br>　　　Plaintiffs Below-<br>　　　Appellants/Cross-Appellees,<br><br>　　　v.<br><br>JOHN WAITE, WILLIAM ATKINS,<br>GREGORY SMITH, and WILLIAM<br>HORNE,<br><br>　　　Defendants Below-<br>　　　Appellees/Cross-Appellants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 523, 2015<br><br>Court Below:  Court of Chancery<br>of the State of Delaware<br><br>C.A. No. 8773-VCP |

Submitted:　April 20, 2016
Decided:　　April 25, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VAUGHN**, Justices; **MEDINILLA** and **HITCH**, Judges,[*] constituting the Court *en banc*.

## **O R D E R**

This 25th day of April 2016, having considered this matter on the briefs filed by the parties and after oral argument, we find it evident that:

(1)　This case involves complicated and unusual facts. OptimisCorp—known to the parties as Optimis—is the company that is the focus of this litigation. The personal relationships among managers and employees of Optimis were of the

---

[*] Judge Medinilla and Judge Hitch are sitting by designation under Del. Const. art. IV, § 12.

type more commonly seen on telenovelas than in Chancery decisions. At the end of the case below, the Court of Chancery's fact-intensive analysis essentially left the parties in the position they were in before trial, leaving them to bear their own costs and declining to award damages to either side. We affirm this exercise of remedial discretion by our State's Court of Chancery, largely for the reasons given in its decision.[1] We do, however, note two issues.

(2)    First, the decision below held that the plaintiffs had engaged in a pattern of witness tampering that justified the Court of Chancery in imposing stringent sanctions. The plaintiffs contend that this unusual ruling threatens the ability of parties to settle related litigation in good faith, without risking that any settlement contingent on parties' agreement to give an affidavit or testify in another proceeding will lead to a finding of witness tampering. Although we agree with the plaintiffs that care in this delicate area should be taken, the Court of Chancery did not make its ruling lightly, and made detailed findings supporting its ultimate conclusion.[2] This included citing to not-so-veiled references to the fact

---

[1] *See Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1212 (Del. 2012) ("This Court . . . will review damage awards and attorneys' fee awards for abuse of discretion. We do 'not substitute our own notions of what is right for those of the trial judge if that judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness.'" (quoting *William Penn P'ship v. Saliba*, 13 A.3d 749, 758 (Del. 2011))).

[2] *See OptimisCorp v. Waite*, 2015 WL 5147038, at *8–21 (Del. Ch. Aug. 26, 2015); *see also Bank of N.Y. Mellon Tr. Co., N.A. v. Liberty Media Corp.*, 29 A.3d 225, 236 (Del. 2011) ("After a trial, findings of historical fact are subject to the deferential 'clearly erroneous' standard of review. That deferential standard applies not only to historical facts that are based upon credibility determinations but also to findings of historical fact that are based on physical or

2

that a key witness in question could be subject to criminal prosecution and other adverse events if she did not give a very detailed statement drafted by the plaintiffs for use in this litigation.[3] Given the record here, the Court of Chancery was within its discretion to make the extraordinary finding that it did. Not only that, at the very least, the Court of Chancery was entitled to draw the adverse inference of facts it did, and the trial court examined the plaintiffs' conspiracy claims on the merits, as an alternative basis for its ruling, and found they were without merit.

---

documentary evidence or inferences from other facts. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (citation omitted)); *Cede & Co. v. Technicolor, Inc.*, 758 A.2d 485, 491 (Del. 2000) ("When factual findings are based on determinations regarding the credibility of witnesses . . . the deference already required by the clearly erroneous standard of appellate review is enhanced." (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985))); *Nixon v. Blackwell*, 626 A.2d 1366, 1378 n.16 (Del. 1993) ("This Court respects and gives deference to findings of fact by trial courts when supported by the record, and when they are the product of an orderly and logical deductive reasoning process, especially when those findings are based in part on testimony of live witnesses whose demeanor and credibility the trial judge has had the opportunity to evaluate.").

[3] *See OptimisCorp*, 2015 WL 5147038, at *14 ("When the money was not enough to get Geller to agree to the language, Plaintiffs resorted to threats. Plaintiffs reminded Geller that the 'most valuable consideration in the [Settlement] Agreement' is that 'Geller is released from being a named defendant in a $25 million or greater claim against those who have illegally harmed Optimis and Morelli,' which refers to this lawsuit." (citation omitted)); *id.* at *19 ("In October or November of 2012, after Geller's sexual harassment claims had been reported, Morelli, through his California lawyers, had a private investigator contact Geller. She understood the import of the investigator's voicemail to be that 'if I did not sit down and talk with him and basically try to work this out, that I would be sued by Alan.' An audio recording of that voicemail was played at trial during cross-examination of Morelli. The investigator stated, in part: 'Evening, Tina . . . . I'm a retired FBI agent and a consultant . . . . I've been retained by the law firm . . . which is representing Alan Morelli to look into the dispute that concerns his purported ouster as CEO of your company . . . . And, you know, what [I'm] afraid is going to happen is that when it comes out, this videotape—which [I'm] afraid it appears is made in violation of California law and could possibly subject you to some criminal prosecution for it . . . .'" (citations omitted)).

That ruling was adequately supported by the factual record and we find no basis to disturb it.

(3)  Second, in addressing a claim by plaintiff Alan Morelli that the defendants who were directors of the company had behaved inequitably by intentionally failing to provide him with notice that an important amendment to a stockholders agreement to which he was a party would be on the agenda at a special meeting of the board, the Court of Chancery described Morelli's claim as resting on a "super-director" theory,[4] in which directors who have large stockholdings and the accompanying right to elect directors have special rights as super-directors.  This tendentious description, in our view, obscures the core equitable question, which is whether all directors are entitled to fair and non-misleading notice of the agenda for a special meeting.  Be it a director with a controlling interest or a director with only a handful of shares, we are uncomfortable embracing the idea that cliques of the board may confer and sandbag a fellow director.[5]

---

[4] *See OptimisCorp*, 2015 WL 5147038, at *67 ("Plaintiffs' theory, fairly understood, is that Morelli had absolute blocking rights against the Board because it would be unjust to take any action against him before he could exercise his rights to remove and reappoint a majority of the board.  This would make him, for all intent and purposes, a 'super-director whose powers trump the board's statutory authority under Section 141(a).'" (quoting *Klaassen v. Allegro Dev. Corp.*, 2013 WL 5967028, at *3 (Del. Ch. Nov. 7, 2013))).

[5] Although the Court of Chancery found that Morelli had sensed that the October 20, 2012 meeting would involve consideration of the sexual harassment investigation against him, the Court of Chancery cited no evidence that Morelli (or certain other board members) received any notice that an amendment to the stockholders agreement that would strip Morelli of his power to

4

(4)  We affirm the lack of a damages award, because the amendment to the stockholders agreement was invalidated by a stipulated final judgment entered in a § 225 action that was brought by Morelli, and Morelli was restored as CEO by a status quo order in that action five weeks after his ouster.[6]  In so doing, we do not embrace the Court of Chancery's framework for analyzing whether the defendant directors behaved inequitably by intentionally concealing from Morelli and other directors their intention to amend the stockholders agreement.  That framework seems to assume that if all directors are required to be given fair notice of the agenda for a special meeting, a director with board appointment rights might in some cases use them, and thereafter elect new directors.  That might, of course, happen.  But if those directors breach their fiduciary duties, our law has potent remedies that the other stockholders can seek.[7]  Indeed, when new directors take

appoint a majority of the board would be considered at the special meeting.  In fact, the record suggests that certain of the defendant directors concealed that intention in advance of the meeting.

[6] The Settlement Agreement to the § 225 action provided that: "The Parties agree that the notices issued for the purported meetings of the Company's board of directors on October 20 and 25, 2012 were not effective and, therefore, any actions of the board purportedly taken at those meetings were void."  App. to Opening Br. at 1997 (Settlement Agreement at 3).

[7] *See, e.g.*, *In re MFW S'holders Litig.*, 67 A.3d 496, 532 (Del. Ch. 2013), *aff'd sub nom. Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014) ("The upfront promise not to bypass the special committee or the majority-of-the-minority condition limits the potential for any retributive going private effort.  A controller who violated this promise would face withering scrutiny from stockholders.  As important, the past generation has demonstrated, time and again, the willingness of the Delaware Supreme Court to uphold strong medicine against violations of the duty of loyalty . . . ."); *In re Cox Commc'ns, Inc. S'holders Litig.*, 879 A.2d 604, 645 (Del. Ch. 2005) (noting that if a transaction was subject to the business judgment rule because it was conditioned from the outset on the approval of a special committee and of a majority of the minority stockholders, minority stockholders would still "retain viable litigation options that

5

office in circumstances of corporate turmoil, they are likely to know that any arguably disloyal action done to please the person who appointed them (e.g., someone like Morelli) at the expense of the company and its stockholders will almost certainly draw close scrutiny and likely litigation.

(5)     As important, we are reluctant to accept the notion that it vindicates the board's right to govern the corporation to encourage board factions to develop Pearl Harbor-like plans to address their concerns about the company's policy directions or the behavior of management.  Rather, it has long been the policy of our law to value the collaboration that comes when the entire board deliberates on corporate action and when all directors are fairly accorded material information.[8]

---

would [] operate to deter overreaching by controllers," including appraisal actions); *cf. Mendel v. Carroll*, 651 A.2d 297, 306 (Del. Ch. 1994) ("No part of [a group's] fiduciary duty as controlling shareholders requires them to sell their interest.  The board's fiduciary obligation to the corporation and its shareholders, in this setting [of minority shareholders asking the board to issue an option to dilute the voting power of a controller group to enable the minority to approve a proposed merger], requires [the board] to be a protective guardian of the rightful interest of the public shareholders.  But while that obligation may authorize the board to take extraordinary steps to protect the minority from plain overreaching, it does not authorize the board to deploy corporate power *against* the majority stockholders, in the absence of a threatened serious breach of fiduciary duty by the controlling stockholder." (emphasis in original) (internal citations omitted)).

[8] *See, e.g.*, *Lippman v. Kehoe Stenograph Co.*, 95 A. 895, 899 (1915) ("Each member of a corporate body has the right to consultation with the others and has the right to be heard upon all questions considered . . . ." (citation omitted)); *id.* at 897 ("[T]here is a deeper reason [for not permitting directors to act by proxy] based on the association of each director with each of the others, of which association none of the associates can divest himself while remaining a member.  In other words, a director cannot authorize any one to act for him, because his associates are entitled to his judgment, experience and business ability, just as his associates cannot deprive him of his rights and powers as director."); *Hall v. Search Capital Grp., Inc.*, 1996 WL 696921, at *2 (Del. Ch. Nov. 15, 1996) ("Absent a governance agreement to the contrary, each director is entitled to receive the same information furnished to his or her fellow board members." (citation omitted)); *see also* J. Travis Laster & John Mark Zeberkiewicz, *The Rights and Duties of*

The Court of Chancery's opinion can be read as indicating that a board faction may engage in deception toward other board members in giving notice of what a special meeting should address so long as the faction subjectively believes that its intended end is good for the corporation. Nothing in our affirmance should be read as endorsing that view, or as expressing any view on a line of fact-specific rulings where inequity was found in deceiving a director about the action intended to be taken at a board meeting.[9]

(6) Finally, we believe it unhelpful to trivialize the rights that large stockholders often procure in connection with their decision to invest in a corporation, either through monetary or human capital. There is a reason that the DGCL authorizes stockholder agreements, and the rights of control that come with them are important to the willingness of people to commit capital to corporations and therefore to the ability of society to create wealth through the corporate form.

*Blockholder Directors*, 70 BUS. LAW. 33, 35 (2015) ("Delaware corporate law embraces a 'board-centric' model of governance. This model expects that all directors will participate in a collective and deliberative decision-making process."); *id.* at 41 ("Given that the DGCL allocates fundamental decision-making power to the board as a whole, and not to any individual director *qua* director, all directors must have the opportunity to participate meaningfully in any matter brought before the board and to discharge their oversight responsibilities. In more granular terms, directors must be afforded, at a minimum, (i) proper notice of all board meetings, (ii) the opportunity to attend and to express their views at board meetings, and (iii) access to all information that is necessary or appropriate to discharge their fiduciary duties, including the opportunity to consult with officers, employees, and other agents of the corporation.").

[9] *See Fogel v. U.S. Energy Sys., Inc.*, 2007 WL 4438978 (Del. Ch. Dec. 13, 2007), *overruled on other grounds by Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035 (Del. 2014); *Adlerstein v. Wertheimer*, 2002 WL 205684 (Del. Ch. Jan. 25, 2002); *VGS, Inc. v. Castiel*, 2000 WL 1277372 (Del. Ch. Aug. 31, 2000), *aff'd*, 781 A.2d 696 (Del. 2001); *Koch v. Stearn*, 1992 WL 181717 (Del. Ch. July 28, 1992), *overruled on other grounds by Klaassen*, 106 A.3d 1035.

When a board faction calls a special meeting, and is dishonest about its intention to use that meeting to alter a stockholder's board appointment rights, the Court of Chancery's analysis should involve a considered evaluation of whether intentional duplicity toward fellow board members is consistent with the fiduciary duties those directors owe to the company and its stockholders, including stockholders who are entitled to rely upon stockholder agreements executed in conformity with the DGCL.[10] Biasing that analysis by describing it as involving the creation of a class of "super directors" is unhelpful. Although it may be that directors who own large amounts of stock and have considerable voting power are entitled to no more fair notice than independent directors, surely they are entitled to equal treatment and we doubt that one would label independent directors "super directors" if they complained after being blindsided by a board majority at a special meeting. Our law should develop in future cases when the outcome turns on it. Having had the amendment to the stockholders agreement promptly invalidated using the tool granted by § 225, the plaintiffs did not satisfy the Court of Chancery that they suffered any additional non-speculative harm.[11] For that reason alone, we affirm.

---

[10] *See* 8 *Del. C.* § 218(c) ("An agreement between 2 or more stockholders, if in writing and signed by the parties thereto, may provide that in exercising any voting rights, the shares held by them shall be voted as provided by the agreement, or as the parties may agree, or as determined in accordance with a procedure agreed upon by them.").

[11] *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010) ("[W]hen acting as the fact finder, [the Court of Chancery] may not set damages based on mere 'speculation or conjecture' where a plaintiff fails to adequately prove damages." (citation omitted)), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010); *Henne v. Balick*, 146 A.2d

NOW, THEREFORE, IT IS ORDERED that the August 26, 2015 judgment of the Court of Chancery is AFFIRMED, and that appellee and cross-appellant William Horne's March 30, 2016 motion asking this Court to award him attorneys' fees and expenses related to this appeal is DENIED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

394, 396 (Del. 1958) ("The law does not permit a recovery of damages which is merely speculative or conjectural." (citation omitted)).