BASSETT et al. v. BICKFORD BROS. CO.

(District Court, W. D. New York. March 11, 1916.)

No. 172–B.

1. CORPORATIONS ⟪═⟫553(1)—RECEIVERS—APPOINTMENT.

Where a corporation, which was unable to immediately discharge its debts, secured an extension from its creditors, and they were given representation on the board of directors, a receiver will not be appointed at the suit of a dissatisfied creditor, though the appointment was concurred in by the president of the corporation, except upon a clear showing of wrongful acts, or threatened injury to the creditors and stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201, 2210, 2213–2216; Dec. Dig. ⟪═⟫553(1).]

2. CORPORATIONS ⟪═⟫552—PRESIDENT—POWERS OF.

The president of a corporation, who, before the corporation got into difficulties, was allowed to conduct corporate affairs, cannot, after creditors, who extended time of payment, were given representation on the board of directors, authorize the appointment of a receiver to liquidate the corporate affairs.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2201; Dec. Dig. ⟪═⟫552.]

3. CORPORATIONS ⟪═⟫547(1)—DIRECTORS—MISMANAGEMENT.

Where there is a mismanagement by corporate directors, or premature disposal of corporate property on liquidation, the creditors and stockholders liable to be injured thereby will be given relief in equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2178; Dec. Dig. ⟪═⟫547(1).]

In Equity. Bill by Henry Bassett and others, suing in their own behalf and in behalf of all other creditors similarly situated, against the Bickford Bros. Company. A receiver was appointed, and thereafter, on motion, the order was rescinded, the answer of the president of defendant corporation stricken, and the directors allowed to intervene for the purpose of answering the bill.

Harlan W. Rippey, of Rochester, N. Y., for complainants.

Lewis, McKay & Bown, of Rochester, N. Y., for defendant.

Stull, Shedd & Morse, of Rochester, N. Y., for stockholders of defendant.

HAZEL, District Judge. The bill of complaint filed herein by a creditor firm, suing in its own behalf and in behalf of all other creditors similarly situated, substantially avers that the defendant, Bickford Bros. Company, though solvent, owes large amounts of money, now due and payable, to many creditors scattered throughout the United States, which it is unable to pay; that a multiplicity of suits are threatened; that its assets will be dissipated; that two certain creditors, in violation of an agreement between other creditors and stockholders, have caused to be appointed a liquidating agent, who threatens to sell the real and personal property at a sacrifice, to the detriment of the stockholders and other creditors; and that preferences are likely to be secured unless receivers are appointed by this court to administer the assets, wind up the business of the defendant, and distribute the

⟪═⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

money realized from sale of the assets among the creditors and stockholders. An answer, verified by the president of the defendant, was interposed, admitting the allegations of the bill and joining in the prayer for relief.

Thereupon solicitor for complainant, solicitor for defendant being present, moved the appointment of receivers. Such appointment being made, the assets and property of the defendant went into the possession of the receivers who have since by order of this court conducted the business. Subsequently an order was applied for and granted to show cause why the said appointment of receivers should not be vacated, and why the answer interposed by the president should not be stricken out and the proposed answer be permitted to stand in its place as requested by a majority of the directors.

It now appears that the verification of the answer by the president of the defendant company was without the authority or knowledge of a majority of the directors, and that the appearance by counsel for defendant, at the time of the appointment of the receivers, and the filing by him of an answer in the name of the company, joining in the prayer of the bill, was voluntary and unauthorized by the directors, two of whom are the creditors mentioned in the bill as having procured the appointment of a liquidating agent to dispose of the assets of the corporation.

The affidavits disclose that on March 4, 1915, the defendant, though having assets largely in excess of its liabilities, was indebted in the amount of $34,000 to numerous creditors, among them the Traders' National Bank of Rochester to the extent of $11,000, and John Boyle & Co., Incorporated, to the extent of $10,000, and in this situation the then board of directors procured from a majority of the creditors a one year's extension of time for payment in writing. In consideration of such extension by the Traders' National Bank and John Boyle & Co., Incorporated, and advances to be made by the bank, the stockholders transferred to them a majority of the capital stock, and, as three members of the board of directors resigned, one Marks, vice president of the Traders' National Bank, Fredericks, a director thereof, and one Randall, treasurer of John Boyle & Co., Incorporated, were elected in their places. According to the terms of the agreement the stock was to be transferred to permit the transferees as trustees "to support and maintain the business of said company in the interest of all parties interested in said corporation as creditors, stockholders, or otherwise," and at its termination was to be reassigned to the owners. On February 10, 1916, the said directors determined to liquidate the affairs of the defendant company, and pending such liquidation efforts were at once made, with fair success, to procure from the creditors further extensions of time for payment. The affidavits submitted on behalf of the directors deny that suits are threatened by creditors, that the extension agreement has been violated by them, that preferences have been given, or that the sale of real estate at a sacrifice is impending, and assert that the company in the year 1915 lost in its business nearly $8,500, and the directors, a majority being present and voting, at a meeting presided over by the president of the

defendant, determined that it would be for the best interest of all concerned to liquidate the affairs of the company.

[1] Thus it appears that at the time of filing the bill the defendant company was practically in control of directors elected under an agreement of which the stockholders and creditors had notice, and representing the creditors in their conduct and management of the business. In these circumstances in my opinion a court of equity should not interfere to take from the directors the management and control of the business, thus entailing expenses of litigation and receivers' fees, save upon a clear showing of wrongful acts or threatened injury to the creditors or stockholders. Certainly it should not do so upon the concerted action of the complainant, a contract creditor, and the president of the company, who evidently is dissatisfied with the proposed liquidation by the directors and trustees for the stockholders.

This action was not brought to abrogate the trust agreement by which the directors acquired their stock, or to enjoin them from threatened acts of mismanagement, but was brought to conserve the assets of the defendant for the benefit of contract creditors who had not reduced their claims to judgment; and receivers should not be appointed herein merely upon the consent of the president or other officer of the corporation regardless of the wishes of the stockholders or directors of the corporation.

[2] Upon this point the complainant urges that as the corporation has permitted its president for many years to conduct its affairs and employ counsel to institute and defend litigations, his authority to answer in this action, admitting material allegations and joining in the prayer of the bill, may be implied, that such exercise of power was customary, and being without the dissent of the company was presumably with its acquiescence. But with this contention I do not agree. The power and authority of a president of a corporation, true enough, may be practically unlimited in the general management of the ordinary affairs of the corporation; but I am totally unaware of any case holding that the president of a corporation, without the consent or acquiescence of the directors or their subsequent ratification, may do an act which will operate to deprive the directors of the management of the corporation and place it in the hands of receivers for the purpose of winding up its affairs. Walters v. Anglo-American Mortgage Co. (C. C.) 50 Fed. 316; Nesbit v. North Georgia Electric Co. (C. C.) 156 Fed. 979; In re Jefferson Casket Co. (D. C.) 182 Fed. 689.

The latter case though in bankruptcy is not inapt, Judge Ray therein holding that the president of a corporation has no inherent power to take the requisite steps to have the corporation declared a bankrupt; that a voluntary petition in bankruptcy filed on behalf of a corporation failing to show any corporate action by the board of directors authorizing the president to file such petition or to execute it in the name of the corporation was not enough to warrant adjudging the corporation bankrupt. The fact that in the case at bar the president for many years had personal charge of the business does not suffice to empower him to take the steps he did, for his control and management were plainly curtailed by the present directors immediately following

the agreement to which I have referred. Recently, in the case of Picher Lead Co. et al. v. U. S. Light & Heat Co., a conservation action in which no opinion was written, I had occasion to examine the precise question here considered, resulting in the vacation of the appointment of receivers, and a re-examination confirms the view held by me at that time.

It is true that in Walters v. Anglo-American Mortgage Co., supra, and in Nesbit v. North Georgia Electric Co., supra, the facts were differentiable. Indeed, the court held in the one case that the bill was entirely without merit, and that the action was instituted for the purpose of wrecking the company and obtaining control of its business, and in the other that the president, with whose consent the receiver was appointed, had an interest adverse to the corporation; but nevertheless the broader rule controlled the decisions, namely, that the admission of the averments of the bill by the president of a corporation, accompanied by his consent to the appointment of a receiver to wind up its affairs, was not notice to the corporation, since it did not appear that the president had authority to do so, or that the stockholders of the corporation acquiesced therein or affirmed his action.

[3] If, however, there really is mismanagement by the directors to the prejudice of complainant, relief, in a proper case, may be had by injunction, or at the instance of any party aggrieved; and if the interests of the stockholders or creditors are likely to be prejudiced by premature liquidation or by sacrifice of properties, no doubt resort may be had to the injunctive power of a court of equity. But no such remedy is asked, nor is it now available, as this action, as heretofore stated, was not instituted for any such purpose.

The answer interposed by the president of the defendant corporation is stricken out, the order of February 23, 1916, appointing receivers, is vacated, and leave is given the directors to intervene for the purpose of answering the bill. Provision for the payment of the fees and other expenses of the receivership may be included in the order of vacation.