## WILLIAM A. BRUCH,

*vs.*

## NATIONAL GUARANTEE CREDIT CORPORATION, a corporation of the State of Delaware.

*New Castle, April* 10, 1922.

Whether a seal on an answer admitting the allegations of a bill for the appointment of a receiver was in fact defendant's corporate seal is immaterial, on motion to vacate a decree appointing a receiver, since the matter may be corrected by amendment.

Though *Chancery Rule* 39 does not require that the verification of an answer admitting the allegations of a bill for the appointment of a receiver aver that the execution thereof has been duly authorized by the board of directors, the practice, except in exceptional circumstances, has been to require such averment as a condition precedent to the Chancellor's exercise of his discretion to appoint a receiver.

The president of a corporation has no implied or inherent power to consent to the appointment of a receiver to wind up its affairs.

Where the by-laws of a corporation provided that the board of directors should consist of seven members, of whom a majority should be necessary to constitute a *qorum*, four are necessary for a *quorum* notwithstanding vacancies have reduced the board to a membership of three, and the unanimous vote of the three directors remaining in office is insufficient to authorize the president to file an answer admitting the allegations of a bill for the appointment of a receiver.

Unless notice be given to each director of a special meeting of the board of directors as required by the by-laws of a corporation, the meeting is illegal, and action taken thereat is not binding.

Even if the board of directors of a corporation may remove a director for cause, such power cannot be exercised in an arbitrary manner; the accused director being entitled to be heard in his own defense.

A director of an industrial corporation, being an officer chosen by the stockholders, cannot be removed by his fellow directors.

Even if *General Corporation Law*, § 3, confers on corporations the power to remove a director, no such power is conferred on directors by provisions thereof conferring on officers, directors and stockholders all powers of the corporation; the purpose being to confer only the powers and privileges that may appropriately be exercised by each group.

A corporation, the assets of which exceeded its liabilities by about $800,000, was not insolvent, within *Revised Code* 1915, § 3883, because its assets were in the hands of temporary receivers appointed in another state, so that the officers were no longer able to pay obligations as they matured, where there were ample funds in the hands of the receivers, who were appointed in proceedings charging, not insolvency, but fraud and mismanagement, and who paid all obligations of which they were able to learn as they matured, though the court appointing them was without jurisdiction.

Courts outside a corporation's domicile will not take jurisdiction of suits to adjust affairs relating solely to its internal management and controversies among its stockholders; such controversies properly belonging to the courts of its domicile.

MOTION TO VACATE DECREE APPOINTING A RECEIVER.   A bill for the appointment of a receiver was filed against National Guarantee Credit Corporation on November 28, 1921, by William A. Bruch, a stockholder, on behalf of himself and all other stockholders.   The bill charged that the defendant corporation was insolvent and prayed the appointment of a receiver by the Chancel-

lor under the provisions of *Paragraph* 3883, *Section* 40, *Revised Code of* 1915.

Upon the filing of the bill the defendant corporation immediately filed an answer admitting all the allegations of the bill, including that of insolvency. The court, on the bill and answer, appointed George L. Townsend, Jr., Esq., receiver of the corporation with the powers usually conferred in such cases.

Thereafter on December 14, 1921, Albert J. Crawford, a stockholder of the defeneant corporation, filed his petition for leave to intervene in the cause, which leave was granted. The intervener, Crawford, thereupon obtained a rule on the complainant and defendant, and on the receiver, to show cause why the decree appointing the receiver should not be vacated. The rule was heard on affidavits and testimony of witnesses taken orally before the Chancellor.

*William S. Hilles*, for the rule.

*Josiah Marvel*, of Marvel, Marvel, Layton & Hughes, opposed.

THE CHANCELLOR. The decree appointing the receiver is attacked on two grounds: First, that the officers of the corporation who filed the answer to the bill acted without the authority of the corporation; and second, that the corporation was not at the time of the filing of the bill, nor at any time since, in fact insolvent. These two contentions will be disposed of in the order of their statement.

First. Were the officers authorized to file the answer on behalf of the corporation admitting the charges of the bill? *Rule* 39 of this court requires, as follows:

"*Rule* 39. Every answer, except the answer of a corporation, shall be under oath or affirmation of the defendant that what is contained in the answer, so far as concerns the act and deed of the defendant is true, and that what relates to the act and deed of any other person he believes to be true.

"The answer of corporations shall be under the seal of the corporation, attested by the president, vice-president, secretary, or treasurer of the corporation. It may be verified under oath of one of said officers, or by some authorized agent of the corporation."

The answer was signed by the corporation by William G. Hubbard, president. What purported to be the corporate seal

was impressed upon the answer and the seal was attested by the corporation's secretary, Charles G. Gartling. A question has been raised as to whether, or not, the seal used was in fact the corporate seal of the defendant. This question, however, I pass over because if it were the only question in the case and it were found that the seal used was not in fact the true corporate seal, the matter could be corrected by amendment. The answer was also verified under the rule by William H. Hubbard, president of the corporation. In addition to the usual statements required by the rule to be made in the verification, the following appears therein:

"That the execution of said answer by the signature of the president and the impression of the seal, attested by the secretary has been duly authorized by resolution of the board of directors."

It will be observed that *Rule* 39 of this court does not require that the verification of the answer shall contain an averment of this character. Except in cases, however, whose circumstances are exceptional in nature, the practice in this court has been to require that in bills against corporations for receivers on the ground of insolvency, the officer who executes an answer which admits the allegations of the bill should show in the verification that his act in making such admission is authorized by the board of directors. The Chancellor, in whose discretion the statute reposes the power to appoint a receiver, has conceived that in the ordinary case he ought, before exercising that discretion in favor of the appointment, require a showing that if any officer assumes to commit the corporation to so momentous a step as the appointment of a receiver for it the act of the officer in that behalf was authorized by the governing body of the corporation.

The president of a corporation has no implied or inherent power to consent to the appointment of a receiver for the purpose of winding up its affairs. *Walters v. Anglo-American Mortgage & Trust Co.*, (*C. C.* ) 50 *Fed.* 316; *Saxon v. Southwestern Brick, etc., Co.*, 113 *La.* 637, 37 *South.* 540; *Bassett v. Bickford Bros. Co.*, (*D. C.*) 232 *Fed.* 895; 2 *Thompson on Corporations*, (2d Ed.) *par.* 1455; 3 *Clark & Marshall on Corporations*, (1st Ed.) 2138; 3 *Cook on Corporations*, (7th Ed.) *par.* 716, *note* 7; 3 *Fletcher's Cyclopedia of Corporations*, § 2046. Whether the answer appears in terms to have been authorized by the directors, or not, the material thing

in all cases regardless of the mere averments is to ascertain what the true fact was. Accordingly, in this case, I proceed to inquire whether the president of this corporation was in fact authorized as a matter of law to execute the answer on behalf of the defendant corporation.

The board of directors of this corporation consisted of seven directors. *Section* 22 of the by-laws provides, as follows:

"At all meetings of the board, a majority of the directors shall be necessary and sufficient to consitute a *quorum* for the transaction of business, and the act of a majority of the directors present at any meeting at which there is a *quorum* shall be the act of the board of directors."

At the time of the filing of the answer there were at the outside not more than four directors in office. One of the points in controversy is whether, or not, James Callans was a director at that time. If he was, then there were four directors in office; if he was not, then there were only three directors in office. Whether, or not, he was a director, I shall discuss later.

The three directors other than Callans met in special meeting at Wilmington, Delaware, and, by resolution unanimously adopted, authorized the president of the corporation to file the answer in the receivership cause instituted against it by the complainant, Bruch. For the present I assume that Callans was not a director. On this assumption, it therefore appears that all of the then existing directors of the corporation in special meeting authorized the filing of the answer. But, under *Section* 22 of the by-laws, the three did not constitute a *quorum* of the board. There were four vacancies in the board. These vacancies could very easily have been filled, for under another by-law it was provided that in case of vacancies on the board "the directors then in office, although less than a *quorum*, by a majority vote, may choose a successor or successors, who shall hold office for the unexpired term in respect of which such vacancy occurred." I need not decide whether in such a situation, it was incumbent upon the directors to proceed to fill all vacancies before proceeding to act as a board, or whether they might have filled just enough vacancies to supply a sufficient number to constitute a *quorum*. The fact is that they filled no vacancies. There was neither a full board in office, nor enough to constitute a bare *quorum*. The rule

is that the number necessary to constitute a *quorum*, under a by-law such as appears in this case, is a majority of the entire board notwithstanding there may be vacancies in the board at the time. *Burton v. Lithic Mfg. Co.*, 73 *Or.* 605, 144 *Pac.* 1149; *Pennington v. George W. Pennington Sons*, 27 *Cal. App.* 57, 148 *Pac.* 947; *Erie R. Co. v. City of Buffalo*, 180 *N. Y.* 192, 197, 73 *N. E.* 26; 3 *Cook on Corporations, par.* 1884; 14a *C. J., p.* 92. The case of *Lippman v. Kehoe Stenograph Co.*, 11 *Del. Ch.* 80, 95 *Atl.* 895; *Id.* 11 *Del. Ch.* 190, 98 *Atl.* 943, and 11 *Del. Ch.* 412, 102 *Atl.* 988, decides nothing which I conceive to be in conflict with the principle enunciated by the foregoing authorities. I am, therefore, of the opinion that there being no lawful *quorum* of the board of directors at the meeting which assumed to authorize the filing of the answer in this case, the answer filed by the president of the company is not the answer of the corporation.

What I have just said is predicated on the proposition that at the time in question, the membership of the board consisted of only three, there being four vacancies. On that assumption, the board was incapable of acting, because, as I have indicated, for the purpose of doing business the *quorum* must be reckoned by calculating the majority of the board as constituted when all the vacancies are filled.

If it be, however, that Callans was also a member of the board, then at the time of the action authorizing the answer the board consisted of four. And in that contingency, the action of the board was further open to objection because no notice of the special meeting of the board on the day when the resolution was adopted was ever given to Callans as required by the by-laws. Unless notice be given to each director of a special meeting of the board of directors as required by the by-laws, the meeting is illegal and action taken thereat is not binding. *Lippman v. Kehoe Stenograph Co.*, 11 *Del. Ch.* 80, 95 *Atl.* 895.

It is contended that Callans was not a director and that therefore the question of notice to him is not involved. This contention is based on the fact that the directors of the corporation had undertaken to remove Callans from his office of director. On September 20, 1921, Callans was both a director and vice-president of the company. On that day the general manager of the company

complained to the board that Callans had been guilty of certain improper conduct, which counsel describe as amounting to embezzlement, but the exact nature of which conduct I am unable to accurately understand from the evidence submitted. At all events, the resignation of Callans as vice-president was demanded and his "future status," as disclosed by the minutes, was to be determined by the president and "his [the president's] recommendations in the matter, after digesting conditions, will have to be put up to the board of directors." Callans never resigned as director and it is but fair to him to say that he testified at the hearing denying all charges or intimations of embezzlement. The minutes of a later meeting of the board held on October 4, 1921 (the legality of which meeting is attacked), disclose that without further notice to Callans and without, therefore, giving him an opportunity to be heard, and without any recommendations from the president, the board, in his absence, resolved that the "seat of James Callans as director of the corporation be declared vacant."

It is contended that under the statute of this state and the articles of incorporation and by-laws of this defendant corporation, the board of directors have the power to remove a director for cause. If this be conceded, it cannot be successfully contended that such power may be exercised in an arbitrary manner. The accused director would be entitled to be heard in his own defense. There was no pretence, in this case, of according to Callans an opportunity to be heard in opposition to the proposal that he be removed from his office of director.

But I am of the opinion that directors of an industrial corporation, such as is the defendant, cannot be removed by his fellow members. A director is an officer chosen by the stockholders. His title to the office is as good as the title of his fellows. His right to the office is quite different from that of those officers of the corporation who are selected not by stockholders but by the directors themselves. If the power of amotion of a director exists, it is reasonable to hold that it shall be exercised by the power that elected him, viz., by the stockholders. To allow directors to frame charges against one of their fellows and then to try and expel him, would open the door to possibilities of fraud which designing men might use to wrest control of corporate affairs from the stock-

holders, or their sympathetic representatives on the board, and transfer it to those who might seek to grasp the corporation for their own ends. The law does not look with disfavor on the policy of securing to minority stockholders a right of representation on the board of directors. This is the reason for the provision allowing cumulative voting. This policy would be endangered, if directors could pursue amotion proceedings against a fellow director. No case has been cited where the power of amotion is held to be lodged in the board of directors of an industrial or business corporation, under such statutes as exist in this state and where the provisions of the certificate of incorporation are such as are found in the case of this corporation. Whether under the law of this state the certificate of incorporation may confer such power on directors is, of course, not a question involved in this case. The cases cited by the solicitor in opposition to the rule are cases which involve either expulsion of a member from a social organization, such as a club, or that deal with corporations of a class entirely different from the one involved in this case. In 7 *R. C. L. p.* 429, the rule is stated, as follows:

"As regards officers elected by the corporation itself, there is no implied power of removal vested in the directors. Officers so elected derive their title to their respective offices from the same source as the directors do theirs and they can be removed only by the power that appointed them. So the board of directors has no inherent power to remove one of their number. Where the by-laws provide that the board of directors shall have power to fill vacancies and prescribe when a vacancy occurs, the board has only power to fill a vancancy which exists in fact—it cannot create a vacancy."

To the same effect is 3 *Fletcher's Cyclopedia of Corporations*, § 1819. In 3 *Cook on Corporations*, (*7th Ed.*) § 711, not only is the power stated to be denied to the directors, but as well to the stockholders. The following cases support the text writers: *Brindley v. Walker, et al.,* 221 *Pa.* 287, 70 *Atl.* 794, 23 *L. R. A. (N. S.)* 1293; *Raub v. Gerken,* 127 *App. Div.* 42, 111 *N. Y. Supp.* 319; *Laughlin v. Geer,* 121 *Ill. App.* 534. The opinion in the case of *Brindley v. Walker, et al.,. supra,* contains the following very pertinent and convincing language:

"The general rule with respect to officers in private corporations such as this is, that all below the grade of directors, and such other officers as are elected by the corporation at large, hold their offices *durante bene placito,*

and are removable by the directors without cause being assigned. The reason for the rule is as obvious as the distinction made. The supreme authority in every corporation resides in its membership. The expressed will of the majority at a regular shareholders' meeting governs in all matters within the limits of the charter. Therefore, when action has been taken by the corporation at such a meeting, on any subject pertaining to the affairs of the association, it is beyond the power of any of the agents of the corporation to undo or change what has been done. The directors are immediate representatives of the corporation charged with the management of its affairs, and are necessarily invested with large discretionary powers; but they can act only where the corporation has not. Ordinarily, the selection of the secretary and treasurer is committed to the board of directors, as was the case here; but when the corporation has itself elected these officers the directors must accept them, and the officers so elected hold on terms and conditions prescribed by the corporation, and none other. They derive their title to their respective offices, from the same source as the directors do theirs, and they can be removed only by the power that appointed them. It is otherwise when the corporation has committed the election to the board of directors. In such case the board stands for the corporation, the officers selected are its appointees, and its power to remove is necessarily implied."

I understand, however, that it is contended that because of the peculiarity of the language of the General Corporation Law of this state (22 *Del. Laws*, *c.* 394), the directors of a corporation have the power conferred on them by the statute to remove one of their own number. If I have correctly comprehended this argument it is, as follows: That the corporation undoubtedly possesses the power of amotion of a director; that *Section* 3 of the General Corporation Law confers not only on the corporation but also on its "officers, directors and stockholders" all the "powers and privileges" contained in this chapter, and "the powers *expressly given in its charter*, or in its certificate under which it was incorporated," etc.; that the certificate of incorporation confers on the board of directors authority "to exercise *all such powers* and do all such acts and things *as may be exercised or done by the corporation*"; that, therefore, the board may by virtue of the grant to it of authority as indicated by these quotations, exercise the power of amotion which is lodged by law in the corporation itself.

The fundamental proposition upon which this argument is constructed is that the corporation has power to remove a director. The statute nowhere confers such power. Yet for the purpose of

examining the argument I shall assume the fundamental proposition to be correct.

It being assumed that the corporation has such power, it is argued that when the statute confers upon "officers, directors and stockholders" all powers of the corporation and gives the directors authority "to exercise all such powers and do all such acts and things as may be exercised or done by the corporation," the power of amotion, which it is assumed lies in the corporation, is by force of the statute carried over and conferred upon the directors. It is to be observed that the grant by the statute of the powers of the corporation is not alone to the directors, but as well to officers and stockholders. This being so, the same argument which would confer upon "directors" the power to remove a director would likewise confer the power upon the "officers" and "stockholders." There is nothing incongruous in the suggestion that the law would repose in "stockholders" the right to remove a director. But it is out of all reason to suppose that the Legislature ever intended to repose a like power in the "officers" who themselves are elected by the directors; for if such were the case, the creature would possess power to destroy the creator.

The foregoing consideration very conclusively suggests that when the statute conferred upon the "officers, directors and stockholders" all powers of the corporation, it meant to confer on each of the designated groups only the powers and privileges of the corporation that could be appropriately exercised by each in performing the functions respectively distributed among them by the law of the state and the certificate of incorporation and by-laws of the corporation.

Inasmuch as under general law as courts have construed it to exist, the power of amotion is not a power to be appropriately exercised by the board of directors, it follows that under the construction of the statute which I have just adopted the board of directors of this corporation did not have that particular corporate power, namely, that of the amotion of a director which it is assumed is lodged somewhere in the corporation.

In the case of *Fensterer v. Pressure Lighting Co.*, 85 *Misc. Rep.* 631, 149 *N. Y. Supp.* 49, an argument somewhat similar to that advanced in this case was rejected by the court. In that case,

however, the question had to do with the power of the executive committee of the board of directors of a Delaware corporation. *Section* 9 of the General Corporation Law of Delaware authorizes the board of directors to appoint an executive committee, which may exercise "the powers of the board of directors in the management of the business and affairs of the company," etc. The by-laws of the corporation in that case provided that any officer elected by the board of directors might be removed by a majority vote of the whole board. The executive committee undertook to remove a vice-president and general manager of the company, who had been elected by the board of directors. It was contended that by virtue of the statutory provision that the executive committee could exercise the powers of the board of directors, the removal of the vice-president by the executive committee was within the scope of its authority. While this contention may have been justified by the logic of the literal language of the statute, yet the court in that case held that the removal of the vice-president by the executive committee was unauthorized.

In the case now before the court I hold that the board of directors have no power conferred upon them by statute to remove one of their own number. Callans was, therefore, a member of the board at the time when the special meeting was held, at which the answer in this case was authorized to be filed. Failure to give him notice of the meeting is an additional circumstance invalidating the action taken at that meeting.

Second. Was the defendant corporation insolvent at the time of the filing of the bill in this case?

Insolvency within the meaning of *Paragraph* 3883, *Section* 40, of the *Revised Code of* 1915, which provides for the appointment of receivers for insolvent corporations, has been defined by this court, as follows:

"Insolvency not being defined in the statute may consist of a deficiency of assets over liabilities, or inability to meet financial obligations as they mature in the usual course of business, or both conditions may exist. It is always discretionary whether a receiver be appointed. It is not true, as claimed by the defendant's solicitor, that an inability to meet obligations as they accrue is the only definition of insolvency. An excess of liabilities over assets may constitute insolvency, unless it appear that there is a reasonable prospect that the business could be successfully continued notwithstanding the deficiency

of assets." *Whitmer v. Wm. Whitner & Sons, Inc.*, 11 *Del. Ch.* 222, 225, 99 *Atl.* 428, 430.

It is conceded that at the time of the filing of the bill in this case, and ever since, the assets of the defendant corporation have been far in excess of its liabilities. This excess of assets over liabilities equals about $800,000. The defendant corporation, therefore, was not insolvent in the sense that its liabilities exceeded its assets. This is conceded.

Was it insolvent in the other sense, namely, that it was not able to meet its financial obligations as they matured in the usual course of its business? That it was so insolvent, is the contention made by the solicitor in opposition to the rule.

The view that the corporation was insolvent in this sense is contended for because of the following facts: It appears that prior to the filing of the bill in this court the defendant corporation was made a defendant in an equity cause filed against it in the Court of Common Pleas No. 2 for the County of Philadelphia, State of Pennsylvania, in which sundry stockholders of the defendant were plaintiffs. That bill charged fraud and mismanagement on the part of the officers of the corporation. It did not charge insolvency. The relief sought in that bill was the appointment of a receiver. The Court of Common Pleas appointed temporary receivers for the corporation. There has not yet been an adjudication of that cause on final hearing. Almost all the assets of the corporation were located in the state of Pennsylvania; relatively speaking the amount of assets outside of Pennsylvania is a trifling sum. It is argued that as soon as the temporary receivers in Pennsylvania took possession of the assets, the officers of the corporation were no longer able to pay obligations of the corporation as they matured in the usual course of business. This being so, it is contended that a condition of insolvency existed, in that the corporation was unable to meet its financial obligations as they matured in the usual course of business, a fact which justified this court in appointing a receiver on the ground of insolvency.

The evidence discloses that the temporary receivers in Pennsylvania have been handling the affairs of the corporation, and that they have met all obligations of the corporation as they mature, at least so far as the receivers have been able to learn of such

obligations.   They have been assuming to conduct the affairs of the company, taking care of its business not only in Pennsylvania, but elsewhere.   That there are ample funds in the hands of the temporary receivers in Pennyslvania to meet all obligations of the corporation is beyond all doubt.   Can it be said that the mere circumstance that the corporation's obligations cannot be paid by the officers of the company, though they may be paid by the temporary receivers of the company, creates a condition of insolvency? I think not.

While officers manage the affairs of a corporation, they are not the corporation.   The receivers who are assuming to act in Pennsylvania are assuming to do so in behalf of the corporation, just as much as the officers, if they were in charge of its affairs, would assume to do.   I think the material thing to consider in passing upon the question of insolvency is, whether or not the assets of the corporation are of sufficient amount and of such kind as would enable the corporation, or those managing its affairs, whether they be its officers or the officer of a court appointed to hold and conserve its assets, to discharge its maturing obligations. By this test the corporation in question was not at the time of the filing of the bill in this case, and at this time is not, insolvent.

If the appointment of a receiver by a court because of fraud and mismanagement, and for the purpose of conserving its property for stockholders and creditors, can be said to constitute a situation where the corporation cannot pay its debts (because its officers are deprived of the ability to do so) then it would necessarily follow that in every case where a court takes charge of the assets of a corporation because of fraud and mismanagement on the part of its officers, by that very act the court would throw the corporation into a condition of insolvency.   If this court, for instance, upon a bill charging fraud and mismanagement, were to appoint a conserving receiver for the corporation, the decree thus obtained for the protection of assets could be utilized to sustain an allegation of insolvency in another bill for the appointment of a liquidating receiver, however liquid and however largely in excess of liabilities its assets might be.   Such a result, unreasonable as it is, would nevertheless be the logical result of the argument advanced for sustaining the charge of insolvency made in this case.

It may be contended that the fact that the temporary receivers of the defendant corporation were appointed by a Pennsylvania court, the corporation being a Delaware corporation and the controversy in the Pennsylvania litigation being with respect to the internal management of the affairs of the corporation, the Pennsylvania court was without jurisdiction to appoint receivers, and that that circumstance, to-wit, the lack of jurisdiction in the Court of Common Pleas in Philadelphia, serves to change the situation with respect to the solvency of the defendant. In other words, it may be contended that there was a lack of jurisdiction in the Court of Common Pleas to appoint the receivers, that the assets of the corporation are, therefore, not in the hands of any one who may rightfully represent the corporation, and that, therefore the corporation, having no one who may rightfully pay its maturing obligations for it, is insolvent.

I think it is true that courts outside the domicile of a corporation will not take jurisidction to entertain suits the object of which is to adjust affairs that have to do solely with the internal management of the corporation's business, and with controversies existing among its stockholders. Such controversies properly belong to the courts of the corporation's domicile, and should there be litigated under the law by which the corporation is created. I understand that the Court of Common Pleas of Philadelphia has as yet not decided it has jurisdiction to try the controversies relating to this corporation now pending before that court. The most that has been done by that court is to appoint temporary receivers. It may be, and I assume it will be, that on a final determination by that court after final hearing, it will not entertain the suit pending before it, further than may be necessary to temporarily conserve assets in Pennsylvania. The more am I persuaded that such will be the outcome of the litigation in the Court of Common Pleas by the ruling laid down in Pennsylvania by the Supreme Court of that state in the case of *Thompson v. Southern Connellsville Coke Co.*, 269 *Pa.* 500, 112 *Atl.* 533, which case is in harmony with the weight of authority elsewhere.

Whatever might be the correct view to entertain in the event that the Pennsylvania court should finally assert jurisdiction by the appointment of permanent receivers, I am clearly of the

opinion that the appointment of temporary receivers by that court, who have taken possession of practically all the assets and are as a matter of fact temporarily managing the corporate affairs and paying all its obligations as they mature, does not justify this court in holding that the corporation is insolvent. The case of *Hitchcock v. American Pipe & Construction Co.*, 89 *N. J. Eq.* 440, 105 *Atl.* 655, cited by the solicitor who opposes the rule, has no pertinency to the question here discussed, for that case, though interesting for its views upon the jurisdiction of foreign courts to appoint receivers for New Jersey corporations, shows the appointment of the receiver by the New Jersey court to have been after a finding that the corporation could not "meet its maturing obligations as they matured," etc., which constituted insolvency within the meaning of the New Jersey statute; and this fact was evidenced by reference to the bill filed in the foreign jurisdiction, and the appointment of permanent receivers after answer filed admitting the allegations of the bill. In the pending case, however, the bill in the foreign jurisdiction does not allege insolvency, nor has there been any final decree.

Let an order be prepared directing the receiver appointed by this court to forthwith file a final report and pass a final account. Thereafter, upon approval of such report and account, a further decree will be entered discharging the receiver and vacating the decree heretofore entered in this cause.