The complainants seek such a decree as will vest in each of them an undivided one-fifth part of certain premises on Davenport Avenue, Newark, upon payment of certain moneys which they tender. Their case rests primarily on a contract dated July 9th, 1945, whereby the trustees in dissolution of Hill Building and Loan Association agreed to sell the premises for $5,000 to five men, namely, the three complainants and two of the defendants, Rudolph Jager and Sanford Ness. The five purchasers were partners engaged in the laundry business at the premises described in the agreement of sale, which they occupied as tenants. They intended to continue the business there after they should get title and the original deposit of $500 paid on execution of the contract, was taken from partnership funds. They did not intend, however, that the balance of the purchase price should be paid out of partnership funds, or that the property should be an asset of the partnership. The day for closing title mentioned in the contract was September 1st, 1945. But the purchasers made no move toward taking title on that day, so the Association's attorneys, Lowy 
Lowy, on November 7th, wrote each of them making time of the essence and fixing December 1st for the payment of the balance of the consideration and the delivery of the deed. The complainants thereupon consulted an attorney, Mr. William H. Becker, but they did not instruct *Page 536 
him to make a search or — so far as appears — to take any other steps in the matter. Jager and Ness ignored Mr. Becker and engaged an attorney of their own, the late H. Edward Wolf. This was indicative of the lack of harmony and the suspicion which existed between the complainants and their two partners. On November 29th, Mr. Wolf gave to the Building and Loan Association the laundry firm's check for $500 and obtained an extension until January 3d. Again the purchasers allowed the day which had been set to pass without action on their part.
The following day, January 4th, 1946, Mr. Waldman, of Lowy 
Lowy, sent by registered mail to each of the purchasers at their common place of business, a notice that the Association required them to complete the purchase on February 5th at a stated hour and place. "The time herein set for the closing is hereby made and shall be considered of the essence of said written agreement." He added a postscript, "You are hereby further notified that our client will convey to one or more of the five persons named as the parties of the second part in said written agreement dated July 9th, 1945, who may desire to close title to the said premises on said February 5th, 1946." Jager and Ness and the complainants Waclowsky and Climick, all admittedly received the letter. Waclowsky also received the envelope addressed to the complainant Sonek and signed the receipt for it. He does not remember what he did with the envelope and testifies that he did not deliver it to Sonek. Sonek says he never received it. Climick and Waclowsky assert that they did not open the envelopes addressed to them, or read the notice until after February 5th, and they, as well as Sonek, deny any knowledge of its purport. But about a week after receipt of the registered mail, complainants instructed Becker to search the title.
On February 5th, at the hour and place which had been set by Waldman, Wolf appeared with his clients Ness and Jager, each of whom had with him $800, his share of the purchase money. Waldman was ready with a deed, executed by the trustees in dissolution of the Building and Loan Association. One of the trustees, Koehler, was also present. The *Page 537 
complainants did not appear, and Jager and Ness were unwilling or unable to pay the entire sum of $4,000 and accept the deed to the five men. After waiting a while, Waldman telephoned Becker who said that his search was not complete and that he had not been informed that this was the day set. He was unable to close title that day. Waldman told him the Association would wait no longer and would consider that the purchasers' rights under the contract of July 9th were at an end. Becker vigorously protested, but Waldman stood firm.
Wolf then informed Waldman and Koehler that he had another purchaser ready to take the property for $5,000, Fischer, a friend of Ness. Waldman told him that the sum of $1,000 which had been paid on account of the old contract, could not be applied on the new sale, and Wolf agreed. Koehler suggested that the Association convey to Ness so as to protect the Association against any claims under the old contract, and that Ness make the deed to Fischer. To that course, no one objected. After the meeting broke up, Waldman prepared a new deed to Ness and had it executed by the trustees in dissolution, and another deed from Ness to Fischer. On February 13th, Wolf, on behalf of Ness, paid the purchase price of $5,000 to the Association and the two deeds were delivered.
Where the time for performance mentioned in a contract for the sale of real estate is regarded as formal only, or where time is of the essence and there is a waiver, time may nevertheless be made of the essence by demand that the title be closed by a given day; but the time given must be reasonable. Orange Society v.Konski, 94 N.J. Eq. 632; 95 N.J. Eq. 254; Strauss v. Rabe,97 N.J. Eq. 208; 98 N.J. Eq. 700; Wyatt v. Bergen, 98 N.J. Eq. 502
and 738. The time given the purchasers by the Association was certainly reasonable. When Waldman mailed his demand dated January 4th, 1946, half a year had passed since the execution of the contract; he gave the vendees a month more. But complainants argue that the failure of Climick and Waclowsky to open Waldman's communication, defeated the Association's attempt to make *Page 538 
time of the essence. Fritz v. Penn Fire Insurance Co.,85 N.J. Law 171. In that case, the question was whether a certain fire insurance policy had been canceled by the company by giving notice of cancellation, as it was authorized to do by one of the clauses of the policy. The company had sent the notice to insured by registered mail. Although insured received the communication, he did not open the envelope or become acquainted with its contents. The court held that the notice was ineffective and that the policy remained in force. The case does not, in my opinion, proceed upon a rule of general application, but rather illustrates the strict construction given to the provisions for cancellation contained in an insurance policy. Registered mail is universally employed for sending important documents and notices. The fact of registry warns the recipient that the letter is of unusual consequence. Waclowsky and Climick were under no compulsion to accept the letter, but when they did so and signed the return receipts, they led the Association to act on the assumption that the notice had been received and read. If they had declined to accept the letter, the Association would have caused a new notice to be given them. To permit them to profit from not opening the envelopes would invite fraud. They are chargeable with knowledge of the contents of the registered envelopes and their failure to open and read is immaterial.
The five complainants are treated collectively in the contract of sale, as a single party jointly obligated to pay the consideration and jointly entitled to the conveyance. Each of several joint obligees has power to discharge the entire claim, and a tender of performance to one is a tender to all. Osborn
v. Martha's Vineyard Railraod Co. (Mass.), 5 N.E. Rep. 486;Carman v. Pultz, 21 N.Y. 547. Likewise, notice to one joint obligee is notice to all of them. Detler v. Holland (Ohio),49 N.E. Rep. 690; Tevis v. Ryan, 233 U.S. 273; 34 S.Ct. 481.
I have not considered that the giving of notice to Ness and Jager bound the complainants because if the Association was aware of the dissension among the purchasers, as seems likely, notice to only one faction might appear *Page 539 
fraudulent and insufficient. But in view of all the facts, the rule that notice to one is notice to all, applies in the case of Sonek.
Upon the failure of the purchasers named in the contract of July 9th, 1945, to appear, ready to take title on February 5th, their right to hold the association to the contract ended, and thereupon the Association was at liberty to make a new sale to anyone with whom it could make a satisfactory bargain, including any of the five with whom it had previously contracted.Doctorman v. Schroeder, 92 N.J. Eq. 676; Delancey StocktonCorp. v. Reliable Imp. Co., 134 N.J. Eq. 71. Let us for a moment consider that Ness was the purchaser of the property. As one of the five joint contractors under the agreement of July 9th, he occupied a confidential relation toward his colleagues and was under an obligation to protect their joint rights. But this obligation did not extend so far as to require him — or Jager — to pay the whole consideration from their own pockets when complainants failed to attend and pay their share. When the five purchasers lost their rights under the contract, the confidential relation of the purchasers toward each other came to an immediate end and each of them was free to act as he chose in respect to the property without regard to the others.
But the five men were also partners in the laundry business and, as partners, joint lessees of the premises in question. One partner holds a fiduciary position toward his co-partners. He may not acquire for his own benefit a title or interest adverse to his firm. But the title of a landlord is not adverse to that of his tenant, and so it is held that one partner may buy for himself real estate which is under lease to the partnership if he buys subject to the lease and practices no deception or fraud upon his co-partners. Anderson v. Lemon, 8 N.Y. 236.
If we accept the defendants' version of the facts, there was actually no sale by the Association to Ness. The Association's vendee was Fischer. He made the bargain and paid the purchase money. Ness took no beneficial title, but held subject to a resulting trust and immediately transferred legal title *Page 540 
to his cestui que trust. The mechanics of the transaction were suggested by Koehler, one of the trustees in dissolution, who proposed that the deed run to one of the parties to the contract of July 9th, as a safeguard against any claim under that contract. He probably had in mind Becker's protests and the postscript to Waldman's notice of January 4th, which stated that the Association would convey to any of the contract parties who might desire to close the title on February 5th. The deed was obviously not given in fulfillment of the contract, for it named only Ness as grantee, and was based on a new consideration, without any credit allowed for the sum of $1,000 already paid.
But the complainants insist that they are the victims of a conspiracy of Jager, Ness, Fischer, and even the Building and Loan trustees. They say that they were always ready and willing to complete the purchase but that the defendants Jager and Ness were unwilling; that Ness said repeatedly that the property was not worth $5,000; that Jager claimed to be unable to pay his share of the purchase money. The complainants' thesis is that Jager and Ness falsely pretended that they would not go forward, in order to dissuade the complainants from taking any action, and by such means they successfully brought about a default by the five purchasers followed by a conveyance from the Association to a third party, Fischer, who really holds for the benefit of Ness or Jager, or both. Jager and Ness retort that they were always eager to buy and that it was the complainants who were reluctant and who refused to take any steps in the matter. They deny, as does Fischer, that they furnished him with any part of the money he paid for the property, or that they have any secret interest in the property.
[Discussion of proofs omitted by direction of the court.]
The complainants have not succeeded in proving the fraud which they charge. I should add that they presented no evidence whatever of any wrongful action or design, or even impropriety on the part of the Building and Loan Association trustees.
The bill will be dismissed. *Page 541