Robert M. SCHRODER, Plaintiff,

v.

SCOTTEN, DILLON COMPANY et al.,
Defendants.

Court of Chancery of Delaware,
New Castle.

Nov. 10, 1972.

432

David T. Dana, III, of Richards, Layton & Finger, Wilmington, and Windels, Merritt & Ingraham, New York City, for plaintiff.

Bruce M. Stargatt and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, for individual defendants.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, for defendant Scotten, Dillon Co.

DUFFY, Chancellor:

This is an action under 8 Del.C. § 225 to determine the present directors and officers of Scotten, Dillon Company, a Delaware corporation.[1] The issue is framed by cross-motions for summary judgment.[2]

### A.

The contest for control of this publicly-owned company involves two factions which are referred to hereinafter as "Berg" and "Schroder." Schroder argues that the lawful directors and officers are those elected on October 27, 1971 (directors) and December 13, 1971 (officers); Berg says that the lawful officers are those elected on December 29, 1971 and the lawful directors are those elected on January 6, 1972 or, alternatively, those elected on December 29, 1971. The question is complicated because ten meetings of directors or stockholders have been held since July 22, 1970 at which either directors or officers were purported to have been elected. But the first five of those meetings were nullified in two actions brought in the United States District Court under the Federal securities laws, Dillon v. Berg, 326 F.Supp. 1214 (D.

Del.1971), aff'd 453 F.2d 876 (3d Cir. 1971), and Dillon v. Scotten, Dillon Company, 335 F.Supp. 566 (D.Del.1971); therefore this Court will only consider the five subsequent meetings.

The first of the five was the reconvened 1970 annual meeting of stockholders held on October 27, 1971 as a result of the District Court's ruling in Dillon v. Berg, supra. An action seeking to invalidate the meeting has been filed and is still pending in that Court upon the ground that proxy soliciting materials used were materially false and misleading; that claim involves a purely Federal remedy as to which this Court does not have subject matter jurisdiction. Investment Associates v. Standard Power & Light Corp., 29 Del. Ch. 225, 48 A.2d 501 (1946), aff'd 29 Del. Ch. 593, 51 A.2d 572; New York Stock Exchange v. Pickard, Del.Ch., 282 A.2d 651 (1971). No other attack upon the meeting or the election has been advanced in this action, and it cannot be disputed that the meeting was held in accordance with the District Court's order, since that Court so found in its opinion and order of August 29, 1972, Dillon v. Berg, 351 F.Supp. 584. I therefore conclude that at the close of the October 27 meeting the board of directors of Scotten, Dillon consisted of those validly in office at the time of the meeting

---

1. 8 Del.C. § 225 provides:

 "Upon the application by any stockholder, . . . the Court of Chancery may hear and determine the validity of any election of any director, manager, trustee, member of the governing body, or officer of any corporation organized under this chapter and the right of any person to hold such office, and in case any such office is claimed by more than one person may determine the person entitled thereto; . . . . In case it should be determined that no valid election of the corporation has been held, the Court of Chancery may order an election to be held in accordance with the provisions of section 224 of this title. In any such application service of copies of such petition upon the corporate resident agent of the corporation shall be deemed to be service upon the corporation and upon the person whose title to office is contested and upon the person, if any, claiming such office; . . . . The Court may make such further or other order respecting notice of such application as it deems proper under the circumstances."

2. This action was filed initially on December 22, 1971 but was stayed by agreement of the parties until September 6, 1972, when an amended and supplemental complaint was filed. Defendants' answer included a counterclaim.

(whose terms carried through it) plus those who were elected to office at the meeting.

This results in a board of nine members in three classes, as follows:

| Term Ending: | 1971 | 1972 | 1973 |
|---|---|---|---|
| | Fred R. Davis [3] | F. Steven Berg | Charles A. Baratelli |
| | Len J. Dillon [3] | William Lerner | Andrew N. Grass, Jr. |
| | Robert A. Goldschmidt | Harold Gray | Robert M. Schroder |

Using the board thus validly constituted after the reconvened 1970 annual meeting as the benchmark, I consider in chronological order the four remaining meetings upon which the claims to office of the parties are based.

### B.

*Special directors' meeting held on December 13 1971*: This meeting was called by Robert M. Schroder and purported to remove F. Steven Berg as chairman of the board, install members of the Schroder faction as corporate officers and members of the executive committee, and abolish the staggered system for electing directors. But it is undisputed that Dillon, who was found by the District Court to be a member of the board, did not receive notice of the meeting and did not attend it.

■■■ A special meeting held without due notice to all directors as required by the by-laws is not lawful and all acts done at such a meeting are void. Bruch v. National Guarantee Credit Corp., 13 Del.Ch. 180, 116 A. 738 (1922); Lippman v. Kehoe

Stenograph Co., 11 Del.Ch. 80, 95 A. 895 (1915); 2 Fletcher, Cyclopedia Corporations, § 406.[4] Schroder argues that only a director who did not receive notice can complain of the defect. But the contention is without merit: in both *Bruch* and *Lippman*, the question of validity was raised by parties other than the director who was without notice. The question of proper notice may be raised by any party when the validity of actions taken at the meeting is in issue. This accords with the rationale of the requirement for notice, which is not only to convenience directors, but also to assure that the corporate body, including its stockholders, is given the "benefit of the judgment, counsel and influence of all" of its directors. *Fletcher, supra, § 406.*

■■■ Here the corporate by-law required notice to "each director" and it was not given; it follows that the meeting of December 13, 1971 was not lawfully convened and actions purported to have been taken are void. Therefore, the board of directors and the officers of the corporation contin-

3. It was thought at the time of the October 27 meeting that Davis and Dillon had been replaced by William M. Prifti and S. Geyer Bean at the 1971 annual meeting held on March 31, 1971. However, the 1971 meeting was nullified by the District Court's decision in Dillon v. Scotten, *Dillon*, supra. Therefore, Davis and Dillon continued to be members of the board at the time of this meeting.

4. Professor Folk suggests that *Bruch* may be interpreted to mean that a directors' meeting may be challenged for lack of notice only if there is a by-law requiring notice. Folk, The Delaware General Corporation Law, 61–62. I need not decide

that question in this case, because Art. IV, § 4 of the Scotten, Dillon by-laws required notice:

" . . .

Notice of each regular or special meeting shall be delivered personally to each director, mailed to him or sent by telegram to his last known place of residence or business at least three (3) days prior to each such meeting. Any director shall be deemed to have waived such notice by his attendance at any meeting. Meetings of the Board may be held at any time and for any purpose, without notice, when all members are present or have waived such notice in writing."

ued to be those who held office after the reconvened 1970 meeting.

### C.

*Special directors' meeting held on December 23, 1971:* Schroder argues that even if the December 13 meeting was unlawful, the actions taken there were ratified at a special directors' meeting held on December 23, 1971. Berg contends that the December 23 meeting is also void on two grounds: (1) Mr. Berg was not given notice of the meeting; and (2) his absence from the meeting was obtained by trickery.

■■■ The first ground is without merit. Berg says in his affidavit that he "never received by mail the form of notice" sent to him. But it is clear that if he did not, it was only because he refused to accept the two registered letters by which notice was sent. One cannot wilfully avoid receiving notice and then claim that he had none. Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 12 S.Ct. 239, 35 L.Ed. 1063 (1892); 58 Am.Jur.2d, Notice § 8; compare Sonek v. Hill Building & Loan Ass'n, 138 N.J.Eq. 534, 49 A.2d 303 (1946), aff'd 140 N.J.Eq. 108, 52 A.2d 852. This has special application to the present case when all parties claiming office, including Berg, must be held to have been on notice that a registered letter signaled news of importance. Cf. Sonek v. Hill Building Ass'n, supra, and 58 Am.Jur.2d, supra. Berg is estopped, under a theory of either constructive notice or waiver of notice (or both), from claiming that he did not receive timely notice of the December 23 meeting. I therefore do not consider any argument based on the absence of notice to him.

■ But Mr. Berg also claims that he was told by Mr. Schroder at a December 22, 1971 "settlement conference" that the December 23 meeting would be postponed until December 29. He says:

"At the Buffalo settlement conference on December 22, 1971, after agreeing to the settlement understanding Mr. Grass and Mr. Schroder explicitly told me that because of the settlement agreement, the directors meeting scheduled to be held the next day (December 23, 1971) in New York City, would be rescheduled to December 29, 1971, at which time the settlement agreement would be implemented. I specifically relied upon that representation, and did not attend the December 23, 1971 directors meeting, and instead made preparation (along with co-director William Lerner) to attend the meeting which was to be scheduled for December 29, 1971."

This allegation is nowhere contradicted or denied in the Schroder affidavits. I therefore find that Mr. Berg's absence from the December 23 meeting was obtained by Mr. Schroder's representation that the meeting would not be held.

■ A quorum obtained by trickery is invalid, 2 Fletcher, Cyclopedia Corporations, § 422, and the reasoning which forbids trickery in securing a quorum applies equally well to securing the absence of opposing directors from a meeting by representing that such a meeting will not be held. I therefore conclude that actions taken at the special directors meeting of December 23, 1971 were void and the officers and directors of the company remained unchanged after that meeting.

### D.

*Directors' meeting of December 29, 1971:* At this meeting the contending facts attempted to install a compromise board of directors and slate of officers under which the company could effectively continue its business while a settlement agreement was worked into final form. The board was increased to twelve members and Max Abraham, Gordon Dane and Morris Himmel were elected to fill the three new directorships. The meeting is not challenged as to notice or conduct. However, Schroder contends that the actions taken should

not be given effect because they were "contingent" upon approval of the proposed settlement by the Delaware District Court.

The language upon which Schroder bases this claim is not so clear as to eliminate all doubt as to the subjective intent of those attending the meeting.[5] However, I find that (1) the parties intended that the officers and directors agreed upon should serve until the next annual meeting of stockholders; (2) both factions are estopped by their subsequent conduct from denying that the directors and officers after the meeting were other than those so agreed upon; and (3) in any event the board did not have the power under the by-laws to condition its actions in the form of a general resolution, as it attempted to do. For these reasons, I am persuaded that the actions taken at that meeting should be given effect, so that the board of directors and the corporate officers after that meeting were those upon whom the two factions agreed.

According to the minutes, Mr. Schroder informed the meeting that the purpose of the actions proposed and voted upon "would be *to provide for a continuity and regularity in respect of the company's management* in order that its relationships with third persons such as its banks, transfer agents and auditors would not be disrupted pending completion of the settlement and presentation of it to Judge Latchum for appropriate consideration and approval." (Emphasis added.) That language indicates that the directors intended to remove the company's operations from the field of fire between the factions, so that it might proceed as normally as possible during an interim of unspecified length while the settlement was completed. It is difficult to believe that the directors intended to thrust the management of the company back into the fray if they were unable to agree upon final terms. And this view is strengthened by the fact that on April 14, 1972 the company reported in its Form 10–K report filed with the Securities and Exchange Commission that "a majority of the directors of Registrant *agreed* at a meeting held on December 29, 1971 that *until the next meeting of stockholders* the executive officers . . . and the board of directors" were those agreed upon at the meeting. (Emphasis added.) That language is unconditional.

It is plain also that for so long as it was convenient to their respective interests the parties treated the results of that meeting as valid and operative. Thus Mr. Schroder's counsel informed him in a letter as late as July 12, 1972 that the meeting was regular and subsequent actions of the executive committee were valid. On April 26, 1972 Messrs. Schroder and Berg informed the company's registrar and transfer agent, Detroit Bank and Trust Company, that Summers and Prouty (who were elected to office at the meeting) were "bona fide officers" of the company. A meeting of the executive committee was held on March 29, 1972, which Mr. Berg convened and over which he presided as chairman. Messrs. Berg, Summers and Prouty signed a letter on April 14, 1972 to the company's independent auditors in which they stated that the board and the executive committee had met and they represented themselves as chairman of the executive committee, the executive vice-president, and controller, respectively. And the company's Form 10–K report to the SEC, filed by Mr. Summers after having been reviewed without objection by Mr. Schroder, showed the officers of the corporation and the board of di-

---

5. The minutes of the meeting state that after the directors voted to expand the board from nine to twelve, the following took place:

"Mr. Grass suggested that the minutes should reflect that the actions being taken at this meeting were in contemplation of the submission to the [sic] Judge Latchum of the proposed settle- ment of pending litigation and in the event such settlement was not approved, substantially in the form submitted, the actions being taken hereat would be null and void. Mr. Davis stated that he agreed and offered a motion to that effect which was seconded by Mr. Berg and unanimously approved."

rectors to be those settled upon at the December 29 meeting.[6]

Finally, I do not think that the board of directors had the power under the by-laws to condition its actions in increasing the number of directors and in filling the vacancies created thereby. Art. IV, § 1 of the by-laws permits the board to *increase* the number of directors between annual meetings of stockholders but nowhere in the by-laws is it given the power to *decrease* membership.[7] If I were to follow the line of Schroder's present argument, then I would be obliged to conclude either that expansion of the board was void *ab initio* or that the directors intended that the board be reduced to its original size and membership at some undetermined point at which settlement negotiations failed. The expansion was certainly not void *ab initio,* since it was clearly within the power of the board to expand its numbers and fill vacancies. If the board had no authority to decrease its membership by a direct resolution, it could not do so indirectly by means of a condition subsequent to an otherwise valid enlargement.

Taking the conduct of the parties during and after the meeting, and considering the doubt with which I view the effect in law of an election purported to have been conditioned in the form reported in the minutes,

I conclude that the board of directors and officers of the corporation are those elected at the December 29, 1971 meeting, unless they were specifically disapproved by the District Court in its consideration of the settlement or there was a valid subsequent election. The settlement was never submitted to the District Court. I therefore leave aside for the moment the question of who such officers and directors were and turn to the question of the validity of the last meeting.

E.

*Special stockholders' meeting, January 6, 1972:* The validity of this meeting is assailed on a number of grounds by Schroder. While I have serious doubt about the validity of the call of the meeting, compare Young v. Janas, 34 Del.Ch. 287, 103 A.2d 299 (1954), I assume for present purposes that it was validly convened and concentrate on the dispositive question which is, simply, was there an election? I find that there was not. The only point in the proceeding at which it can be argued that an "election" was held was when the presiding officer, Mr. Schroder, said, "In the meantime, all the proxies here today and persons who desire to personally cast ballots please deliver their proxy cards, and we

---

6. There are certain discrepancies between the directors listed in the Form 10–K report and those agreed upon at the meeting. Baratelli and his replacement, Summers, are both listed as serving, and although Dillon is not shown, neither is his supposed replacement, Schaefer. These discrepancies are of no significance on the parties' intent as shown by the 10–K.

7. The by-laws provide, in Article IV:
"SECTION 1. *Number and Qualifications.* The business . . . of the Company shall be managed . . . by a Board of Directors consisting of no less than six nor more than fifteen persons, . . . . the number of directors . . . shall be determined by the stockholders at each annual meeting, provided, however, the Board of Directors may increase the number of

directors within the limits set forth above between annual meetings of the stockholders and appoint interim directors to fill any vacancies thus created until the next annual meeting of stockholders.

. . . . .

SECTION 3. *Vacancies.* If the office of any director becomes vacant by reason of death, . . . increase in the number of directors or otherwise, the remaining directors may, at any regular or special meeting of the Board . . . elect a successor who shall hold office for the unexpired term . . . . However, in the case of an interim appointment to fill a vacancy created by an increase in the number of directors, the interim director or directors shall serve only until the next annual meeting of stockholders."

have some here, directly to the Corporation Trust Company now." That was said after a brief introductory statement by Mr. Schroder explaining the background of the struggle between the factions and the mechanics of the proposed settlement. In spite of Mr. Schroder's reference to "ballots," there is simply nothing in the record which indicates that anyone present at the meeting would have been aware that voting of any sort was taking place, much less the election of officers and directors. There was no statement by the Chair that an election had been reached in the order of business, no call for nominations, no announcement of proposed slates, no issuance of ballots, no casting of ballots. There is simply nothing in the transcript of that meeting to convince the Court that a bona fide election took place. Compare Chapman v. Barton, 345 Ill.App. 110, 102 N.E.2d 565 (1951).

Since the meeting was adjourned without any other business having been conducted, the remaining contentions of the factions as to alleged defects in the notice and call of that meeting are irrelevant.

**F.**

Having decided that the actions taken at the directors' meeting on December 29, 1971 were valid and effective and have not been superseded, I return to the question of which persons are the present directors and officers of Scotten, Dillon.

Prior to the December 29 meeting the board of directors consisted of nine members serving staggered terms as noted above: Messrs. Baratelli, Berg, Davis, Dillon, Goldschmidt, Grass, Gray, Lerner and Schroder. At the December 29 meeting, the staggered terms system was eliminated and the board was increased to twelve members, leaving three vacancies.[8] Elected to those three vacancies were: Messrs. Abraham, Dane and Himmel. At that point the board was regularly constituted with no vacancies.

It was then announced that Baratelli would probably have to resign, and in anticipation of that Summers was elected to the board for a term to begin with Baratelli's resignation. Baratelli's resignation was tendered with an effective date of

8. Art. IV, § 2 of the by-laws prior to the meeting provided:

"*Classification and Term of Office.* The first Board of Directors of the Company, consisting of seven persons, shall be divided into three classes. The first class shall consist of three persons who shall hold office for a term of three years. The second class shall consist of two persons who shall hold office for a term of one year. The third class shall consist of two persons who shall hold office for a term of two years. In the event of an increase in the number of directors the total number of directors shall be divided into three classes as equal in number as may be possible. At all annual elections of directors after 1969 each class of directors whose term then expires shall be elected by the stockholders for a term of three years; except that interim directors appointed to vacancies created by an increase in the number of directors between annual meeting of stockholders, shall be elected for the balance of the term of the other directors in their class. Each director so elected shall hold office for the term for which he was elected and until his successor is elected and qualified. Nothing herein contained shall be construed to prevent the election of a director to succeed himself."
That section was amended at the meeting by the following resolution:

"RESOLVED, that Article IV, Section 2 of the By-laws be and the same hereby is amended by the deletion of the provisions therein contained and by the substitution therefor of the following:

'The director of the Company shall be elected at each annual meeting of stockholders. Each director shall be elected to serve until the next annual meeting of stockholders and until his successor shall have been duly elected and qualified.'"
Following that amendment, the board was expanded.

December 29, 1971, although Mr. Schroder apparently kept the document in his physical possession for several months thereafter. It is not disputed that Baratelli has resigned, however, and I find that Mr. Summers therefore replaced him on the board.[9]

 It was announced also that Mr. Dillon intended to resign, which he later did. But the parties disagree as to whether his replacement was elected at the meeting. Grass' minutes show that James Schaefer was elected to replace Dillon, effective upon the latter's resignation. Summers says in his affidavit that the minutes are "incorrect insofar as they recite that Mr. Schaefer was formally elected as a director."

 Although the minutes of a directors' meeting are the best evidence of what took place there, parol evidence is admissible to supplement or contradict the events as reported in the minutes. Cheff v. Mathes, Del.Supr., 41 Del.Ch. 494, 199 A.2d 548 (1964); 30 Am.Jur.2d, Evidence, 1025; cf. Young v. Janas, supra. The question of what actually happened is therefore one validly put in issue, and it raises a material issue of fact which I cannot resolve on the motion for summary judgment. In short, the prima facie accuracy of the minutes is neutralized by the affidavit.

I therefore grant partial summary judgment to defendants on the issue of composition of the board of directors: the board consists of twelve offices with eleven present members: Messrs. Abraham, Berg, Dane, Davis, Goldschmidt, Grass, Gray, Himmel, Lerner, Schroder, Summers. The terms of these members run until the next meeting of the stockholders of Scotten, Dillon Company. The status of the twelfth position must remain in issue until both sides have had an opportunity to present evidence as to whether Schaefer was elected to take Dillon's place.

## C.

I now turn to the officers of the corporation. The record of the meeting is clear as to the following elections and I find that the following hold the offices indicated:

| | |
|---|---|
| Chairman of the Board: | Harold Gray |
| President: | Robert M. Schroder |
| Executive Vice-President and Treasurer: | Ernest Summers |
| Secretary: | William Lerner |
| Comptroller: | Dennis Prouty |

The executive committee consists of Messrs. Berg (Chairman), Gray, Schroder, Grass and Summers.

 The complaint also asks that the proper incumbent of the office of Vice-President, Marketing be determined. No action was taken as to that office at the meeting when Robert L. Severance was the incumbent. The board of directors had the power to remove an officer but that required "the affirmative vote of a majority of the Board of Directors." By-laws, Art. V, § 3. Since there was no such affirmative vote at the meeting, Severance was not removed, 2 Fletcher, Cyclopedia Corporations, § 360, and therefore continued in office as the Vice-President, Marketing. However, he has since left the Company and the office therefore is vacant.

Order on notice.

9. 8 Del.C. § 223(d) provides:

"Unless otherwise provided in the certificate of incorporation or by-laws, when one or more directors shall resign from the board, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in this section in the filling of other vacancies."